## STURGES *v.* THE COLLECTOR.

Under the 6th section of the act of March 3d, 1865, which enacts that "there shall be hereafter collected and paid on *all* goods, wares, and merchandise, of the growth or produce of countries east of the Cape of Good Hope (except raw cotton and raw silk as réeled from the cocoon, or not further advanced than tram, thrown, or organzine), when imported from places west of the Cape of Good Hope, a duty of *ten per centum ad valorem, in addition* to the duties imposed on any such article when imported directly from the place or places of their growth or production," a duty of ten per cent. is chargeable on such goods, &c., when imported from places west of the Cape, though the same goods be freed from duty, when imported from the place of their growth or production, east.

ERROR to the Circuit Court for the District of New York.

This was an action brought in the court below against the collector of the port of New York, to recover a sum exacted as a ten per cent. *ad valorem* duty upon a quantity of indigo, the product of a country east of the Cape of Good Hope, and which had been imported into New York, on the 7th of July, 1865, from England.

Whether the right to lay the duty did or did not exist, depended on the construction of the 6th section of an act of Congress of March 3d, 1865,* relating to the importations of goods from places west of the Cape of Good Hope, in cases where the goods were the products of places east of it. It was not denied, apparently, that if the indigo had been imported directly from the place of its growth, the duty would not have been payable. The difficulty was under the act just mentioned and in regard to an importation not direct, but from England, a place west.

This act of March 3d, 1865, already referred to, as in force when this particular cargo was imported, had been preceded by other acts on the same subject, and by some judicial construction on one of them. That history was thus:

By section 14 of the act of July 14th, 1862, entitled an

---

* 13 Stat. at Large, 493. See the act *infra*, p. 22.

act "*increasing* temporarily the duties on imports and for other purposes,"* it was enacted, that:

" There shall be levied, collected, and paid on ALL goods, wares, and merchandise, of the growth or produce of countries beyond the Cape of Good Hope, when imported from places *this side* of the Cape of Good Hope, a duty of ten per cent. *ad valorem*, AND in addition to the duties imposed on any such articles when imported directly from the place or places of their growth or production."

In the official edition of the statutes the word "and " just above printed in large capitals, was printed in italics; a form of printing which indicated that the compiler of the edition supposed it an accidental insertion, and superfluous.    An act subsequent to that above-quoted act, namely, of March 3d, 1863,† enacted that the above-quoted section should be so modified as

" To allow cotton, and raw silk as reeled from the cocoon, of the growth or produce of countries beyond the Cape of Good Hope, to be exempt from any *additional* duty when imported from places this side of the Cape of Good Hope, for two years from and after the passage of this act."

These two articles were exempt from duty at the time of the passage of the above-quoted act of 1862.

Soon after the passage of the act of 1862, but before the act of 1863, modifying it, one Hadden, imported into New York from England, a quantity of raw silk, the product of Persia, and which it was admitted but for the act of 1862 would have been free from duty.  A duty of ten per cent. being exacted and paid under protest, Hadden brought suit in the Circuit Court for New York, against the collector, to recover what he had paid; his idea in bringing suit to recover the duty paid on the silks, being that:

1st.  That the expression in the act of 1862, " AND IN ADDITION to the duties imposed on such articles when imported

---

* 12 Stat. at Large, 557.                † Ib. 742.

directly from the place or places of their growth or importation," laid the ten per cent. only in cases where the product was already subject to some prior duty, large or small.

2d.. That by the words "*this side of the Cape,*" goods imported into the Atlantic ports were within the terms and chargeable with duty, while goods imported into the Pacific ports were not within them, and not chargeable, and so that the clause of the Constitution, which requires all duties to be uniform throughout the United States, was contravened; and the enactment itself, of course, void.

The Circuit Court, admitting that previous sections of the act did undoubtedly lend some countenance to the importer's argument that the duty was laid only where a prior duty existed, and that the 14th section itself was obscure, still considered, on the whole statute, that the silks were meant to be charged with the ten per cent. *ad valorem*, and that as the expression "*this side* of the Cape,*" was only another form of saying "places *west* of the Cape," that judgment was to be given for the United States. It was so given accordingly. That judgment was affirmed in this court on error;* the Supreme Court adverting to the act of 1863, modifying that of 1862, as showing that the understanding of Congress was that the ten *per cent.* was imposed as an additional duty, though in fact raw silk, as already stated, was at the time exempt.

In June, 1864, seven months after the decision just mentioned of Hadden's case, on the circuit, Congress repealed section 14th of the act of 1862,† and by an act like the former one, entitled "an act to increase duties on imports," &c., enacted:

"That on and after the day and year this act shall take effect, there shall be levied,. collected, and paid on all goods, wares, and merchandise of the growth or produce of countries east of the Cape of Good Hope (except raw cotton), when imported from places *west* of the Cape of Good Hope, a duty of ten per centum *ad valorem*, *in addition* to the duties imposed on any such articles

---

* Hadden *v.* The Collector, 5 Wallace, 107.    † 13 Stat. at Large, 216.

when imported directly from the place or places of their growth or production."

The reader will observe that the words " this side " of the Cape of Good Hope, in the act of 1862, are changed in the new act to " west " of the Cape, and that the word " and " disappears.

This enactment was in substance (with an extension of the exemption from duty to raw silk in certain condition), re-enacted in section 6th of an act of March 3d, 1865,* under the provisions of which the defendant levied and collected the duties upon the plaintiff's importations. That section enacted:

" That there shall be hereafter collected and paid on all goods, wares, and merchandise of the growth or produce of countries [east] of the Cape of Good Hope (except raw cotton and raw silk as reeled from the cocoon, or not further advanced than tram, thrown, or organzine), when imported from places west of the Cape of Good Hope, a duty of ten per centum *ad valorem*, in addition to the duties imposed on any such article when imported directly from the place or places of their growth or production."

In the present suit, the court below gave judgment for the collector, and the importer brought the case here.

*Mr. George Ticknor Curtis, and Mr. A. R. Culver, for the plaintiff in error:*

1. The difficulty which existed, as to the proper construction of the 14th section of the act of 1862, was remedied by Congress in June, 1864, by an enactment, as a substitute for the 14th section of the act of 1862, leaving out in the latter act the word " *and*," substituting the word " *east*" for " *beyond*," the words " *west of*" in place of the words " *this side*," and repealing in terms the act of July 14th, 1862. This repeal and substitution took place seven months after the de-

---

* 13 Stat. at Large, 493.

cision on the circuit, in the case of *Hadden* v. *The Collector*, Congress being at the time aware of the construction which had been put upon the 14th section of the act of 1862, by the courts. Why after this decision in favor of the government, did it thus legislate upon the subject, repeal the act of 1862, enact a new section, and use different language in the latter act, unless for the purpose of showing that the court had misunderstood its former intentions, and of placing them beyond doubt?

2. Laws imposing duties are never construed beyond the natural import of the language used, and duties are never imposed upon the citizen upon *doubtful* interpretations.* If he who could, and ought to have explained himself clearly and fully has not done it, it is the worse for him. This is a maxim of the Roman law.

*Mr. Akerman, Attorney-General, Mr. Bristow, Solicitor-General, and Mr. Hill, Assistant Attorney-General, contra:*

The interpretation put upon the act of July 14th. 1862, in the Circuit Court in *Hadden* v. *The Collector*, became a part of the statute itself, and if Congress, in subsequent statutes, used the same or substantially the same language, the legal presumption is that it intended that the language should bear the judicial construction previously given to it.† Now there is no essential difference in the language of the acts. The omission in the act of 1864, of the conjunction " and " before the words " in addition to," in the act of 1862, does not indicate an intention to limit the application of this section to articles previously dutiable.

This act of 1862, was substantially re-enacted in the act of 1865, which was in force when these goods were imported, the only difference being that the exception is extended to raw silk.

The object of these duties " in addition," was, of course, to increase the revenue. In distributing the additional bur-

---

* Adams *v.* Bancroft, 3 Sumner, 387.

† Kirkpatrick *v.* Gibson, 2 Brockenbrough, 388; Commonwealth *v.* Hartnett, 3 Gray, 450.

den thus caused, it would seem proper that those favored articles, which had heretofore been admitted free of duty, should bear some portion of it. If, besides this, it was the purpose of Congress, as it doubtless was, to discriminate against the products of countries east of the Cape of Good Hope, when imported from places west of the Cape, no good reason can be assigned why such discrimination should not apply to articles otherwise exempt from duty as well as to dutiable articles.

Laws imposing duties and taxes are not to be construed strictly against the government, but liberally, so as to effectuate the purpose of the legislature.*

Mr. Justice CLIFFORD delivered the opinion, affirming the judgment.

Moneys paid for import duties, when illegally levied, may be recovered back by the owner, importer, or consignee in an action of assumpsit against the collector by whom the same were exacted, if the payment was made under written protest, as required by law, and the party making the payment failed to obtain redress by appeal seasonably taken to the Secretary of the Treasury.†

Forty-one chests of indigo, the product of India, were, on the seventh of July, 1865, imported by the plaintiffs from London, England, into the port of New York, and the agreed statement shows that the late collector of that port levied and exacted as duties thereon ten per centum *ad valorem;* that the plaintiffs paid the same under written protest, and that the decision of the collector levying the duties, on appeal duly taken to reverse the same, was affirmed by the Treasury Department.

They protested that the assessment was illegal upon the ground that the goods were entitled to be admitted to entry free of duty, and having failed to obtain redress from the Secretary of the Treasury for what they regarded as an ille-

* Cliquot's Champagne, 3 Wallace, 114, 145; United States *v.* Hodson, 10 Id. 395.

† 13 Stat. at Large, 215.

gal exaction, they brought an action of assumpsit against the executors of the late collector to recover back the amount so exacted and paid for the duties.

Process having been issued and served, the defendants appeared and the parties went to trial, but they ultimately submitted the case to the decision of the court upon an agreed statement of facts. Before the case was finally submitted, however, the parties were heard, and the court subsequently rendered judgment for the defendants, and the plaintiffs sued out a writ of error and removed the cause into this court.

Whether the goods imported in this case were dutiable or not depends upon the construction to be given to the sixth section of the act of the third of March, 1865, which provides that there shall be hereafter collected and paid *on all goods, wares, and merchandise,* of the growth or produce of countries east of the Cape of Good Hope (except raw cotton and raw silk as reeled from the cocoon, or not further advanced than tram, thrown, or organzine), when imported from places west of the Cape of Good Hope, a duty of *ten per centum ad valorem,* in addition to the duties imposed on any such article when imported directly from the place or places of their growth or production.*

Strike out the last clause, commencing with the words "in addition," and the body of the section would be as clear as any enactment can be that all goods, wares, and merchandise (save the two excepted articles), imported from places west of the Cape of Good Hope, if grown or produced in any country east of the Cape of Good Hope, are by that provision subject to a duty of ten per centum ad valorem.

Argument upon that subject is unnecessary, as the proposition is as plain as anything in legislation can be, but if that clause had been omitted goods imported from London, the growth or production of India, would not have been subject to any higher rate of duty than goods of like kind imported directly here from India, the place of their growth or production, unless the goods were, by antecedent laws, sub-

---

* 13 Stat. at Large, 493.

jected to a rate of duty higher than that imposed in the section under consideration, which would have defeated wholly or partially both purposes which Congress had in view in enacting the new provision.

Congress desired to raise more revenue from importations consisting of articles grown or produced in countries east of the Cape of Good Hope, and at the same time to preserve and continue the discrimination established by existing laws in favor of importations made directly from the countries where the articles imported were grown or produced.

· Had the last clause of the section been omitted the new provision, in any view of the subject, would not have augmented the revenue to any considerable extent, and if construed as repealing the prior laws upon the same subject its effect would have been very largely the other way, and it would have operated as a discrimination against the direct trade and in favor of the importation of such articles from countries west of the Cape of Good Hope, or in other words, it would have reversed the policy of the government by encouraging the indirect instead of the direct trade in the articles of commerce grown or produced in those distant countries. Evidently, therefore, the clause providing that the duty levied by the section was in addition to the duty imposed *on any* such article when imported directly from the place or places of their growth or production was an indispensable provision to carry into effect the purposes intended to be accomplished by the enactment.

All articles of the growth or product of countries east of the Cape of Good Hope, except the two named as exempted, when imported from places west of the Cape are declared to be subject to the rate of duty therein prescribed, and to prevent any misconception as to the intention of Congress and to close the door against any suggestion that the new provision repealed or modified the prior law, it was provided that the new duty was in addition to the duties previously "imposed on any such article" when imported directly from the place or places of their growth or production. Ten per *centum ad valorem* is imposed on all such goods, wares, and

merchandise, except the two articles named as exempted, whether they were or were not subject to duty as articles of direct trade under any antecedent law, if they fell within the conditions specified in the sixth section of the act imposing the duty.

Certain articles of the growth or production of countries east of the Cape of Good Hope were subject to duty, even when imported here directly from the place of their growth or production, while other articles, when so imported, were entitled to be admitted to entry free of duty. Articles of the kind described in the section, not dutiable as articles of the direct trade under any antecedent law, were to pay only the ten per centum ad valorem specified in the section, but all articles previously dutiable as articles of the direct trade, save the two exempted in the body of the section, were to be subject, in case they were imported here as articles of the indirect trade, to a duty of ten per *centum ad valorem* in addition to the duty imposed under any prior law, in case the articles were imported here directly from the place or places of their growth or production. Construed in that way, both of the purposes which Congress had in view were accomplished, as the provision had the effect to augment the revenue, and at the same time to preserve and continue the discrimination created by antecedent laws in favor of the direct trade, which is in accordance with the policy of our external revenue system as exhibited in all our laws upon the subject.

Raw cotton and raw silk as reeled from the cocoon, or not further advanced than tram, thrown or organzine, were exempted from the new duty, or any other, by an exception inserted in the body of the section, and it is a reasonable conclusion that if Congress had intended to exempt any other articles of the growth or production of those countries, the articles would have been enumerated and included in that exception. *Expressio unius est exclusio alterius.*

Such an exception as that inserted in the body of the section was indispensable to exempt any such article from the new duty, as the introductory words of the section include, in express terms, all goods, wares, and merchandise, of the

described character, when imported from places west of the Cape of Good Hope. Unless it can be assumed that the words " all goods, wares, and merchandise " are not used in their ordinary sense, it must be understood that they include all such articles of importation not specifically exempted, as the exception proves the rule, and shows to a demonstration that all such articles, except those two are subject to the prescribed duty, and that the last clause was not superadded to exempt any other articles from the operation of the introductory words of the section, but to prevent the entire provision from being misunderstood and misapplied, so as to defeat one or both of the purposes which Congress had in view in passing the law. Confirmation of this view is derived from the antecedent legislation of Congress upon the same subject.

Duties on imports were temporarily increased by the act of the fourteenth of July, 1862, the fourteenth section of which levied " on all goods, wares, and merchandise of the growth or produce of countries beyond the Cape of Good Hope a duty of ten per cent, ad valorem, *and* in addition to the duties imposed on any such articles when imported directly from the place or places of their growth or production."

Attention need only be called to the last clause of that enactment, as it is not controverted that the legal effect of the body of the section, under which the duties in this case were levied and collected, is substantially the same as the corresponding portion of that provision, but the suggestion is that the last clause in the last act is materially different from that of the former, as it does not contain the word " and" before the words " in addition," as employed in the prior act. Drop the word " and" before the words " in addition," as employed in the former law, and the language of the respective clauses is the same without the variation of a single letter.*

Congress having subsequently repealed that provision, found it necessary at a later period to re-enact it, and in re-

---

* 12 Stat. at Large, 557; 13 Id. 493.

producing the provision the word " and" before the words
" in addition," as employed in the prior law, was dropped
evidently because it was a redundant word wholly unneces-
sary to give expression to the meaning and intention of the
law-makers. When the act was transcribed for official pub-
lication the word " and" was italicized by the compiler of
the acts of Congress as expressive of his opinion that it was
a redundant word, as it plainly appears to be to every one
acquainted with the revenue laws and the subject-matter to
which the particular provision relates.*

Importations of raw silk, soon after the passage of that
act, were made from Liverpool, England, into the port of
New York, and it was agreed in the statement of the case
that the articles imported were the products of Persia and
China. Ten per cent. duty was exacted, and the merchant
paid the same under protest 'and brought assumpsit against
the collector to recover back the amount paid. He was de-
feated in the Circuit Court and he removed the cause into
this court, where the judgment of the Circuit Court was
affirmed by the unanimous opinion of this court. In dis-
posing of the case the court say that the latter clause does
not qualify the general language, " on all goods, wares, and
merchandise," employed in the body of the section, so as to
exclude from it the articles exempted from duty under prior
acts of Congress. Instead of that, the court proceeds to say
that it only provides that the duty laid by the body of the
section " shall be in addition to existing duties on such
articles when imported directly from their places of growth
or production;" that such articles as already pay a duty
when imported directly from those places shall pay a further
duty, as therein prescribed, if imported from countries west
of the Cape, the object being to increase the duty upon the
articles when not imported directly from their places of
growth or production.†

Based as that opinion is upon the proposition that the

---

* 13 Stat. at Large, 216; Ib. 493.
† Hadden *v.* The Collector, 5 Wallace, 112.

latter clause of the section does not qualify the first clause imposing the new duty, it is decisive of the question before the court, as it is clear that the word "and" before the words "in addition" was not regarded as of any importance or as contributing in any degree to that conclusion. On the contrary, the court decided on that occasion, what undoubtedly is correct, that the words "any such articles," in the last clause of the section, "do not mean all the articles embraced in the first clause, but only such of them as were already subject to duty," to which we add, leaving all the rest subject to the new duty imposed by the first clause or the body of the section.

Support to that conclusion was also drawn, in that opinion, from the second section of the act of the third of March, 1863, modifying the fourteenth section of the prior act, and providing that cotton and raw silk, as reeled from the cocoon, of the growth or produce of countries beyond the Cape of Good Hope, should be exempted from any additional duty when imported from places this side of the Cape for two years from and after the passage of the act.*

Unaided by one or two remarks of the circuit judge in disposing of that controversy in the Circuit Court, the defence here would be entirely without support, but it is a sufficient answer to those remarks to say that the decision of the case when removed here by writ of error was not placed upon that ground; that the ground assumed in this court was that the last clause of the section, when properly construed, did not qualify the body of the section in respect to the articles not previously dutiable; that it merely provided that the new duty was an additional one in respect to articles subject to duty under prior laws, leaving all other articles embraced in the first clause or the body of the section subject to the new duty therein prescribed; and the court as now constituted, is clearly of the same opinion.

JUDGMENT AFFIRMED.

---

* 12 Stat. at Large, 557; Ib. 742.