**EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff-
Appellant,**

v.

**KIMBERLY–CLARK CORPORATION,
Defendant-Appellee.**

No. 74–1558.

United States Court of Appeals,
Sixth Circuit.

Feb. 14, 1975.

William A. Carey, Gen. Counsel, E. E. O. C., Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Beth L. Don, Washington, D. C., for plaintiff-appellant.

J. Fraser Humphreys, Jr., Alexander W. Wellford, Jr., Lawler, Humphreys & Dunlap, Memphis, Tenn., J. Leonard Samansky, Lipkowitz, Plaut, Salberg & Harris, New York City, for defendant-appellee.

Before CELEBREZZE and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This case presents several procedural questions of importance to the Equal Employment Opportunity Commission (EEOC) and to parties bringing and defending charges before it. The basic issue is the scope of the EEOC's power to enforce the provisions of Title VII of the 1964 Civil Rights Act. The specific issues are whether the 1972 amendments to Title VII apply to this suit, whether the EEOC is barred from suing more than 180 days after a charge is filed with it, whether Tennessee's statute of limitations bars the suit, whether Appellant's suit may encompass particular race and sex discrimination charges, and whether the EEOC is limited to the right of permissive intervention once a private civil suit is brought.

This action began on February 2, 1973, when the EEOC sued in federal court to enjoin Appellee from engaging in employment discrimination based on sex and race. The complaint alleged that all conditions precedent to instituting the

suit had been fulfilled and that Appellee had been and was then engaged in employment practices unlawful under section 703(a) of Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e–2 (1974).

On April 4, 1973, Appellee filed a motion to dismiss or to obtain a more definite statement of Appellant's claims. On May 21, 1973, the District Court ordered Appellant to "set forth in their complaint specific charges alluded to and those steps or actions deemed to be prerequisite to the bringing of the complaint.   .   .   ."

On June 18, 1973, Appellant filed an amended complaint, setting forth identical statements alleging illegal policies and practices but specifying the individual charges which had been filed with it against Appellee.  A second amended complaint was filed on July 2, 1973.

Appellee then filed a document alternatively styled as a motion for summary judgment under Rule 56, Fed.R.Civ.P., a motion to strike allegations of the individual charges on various grounds, or a motion to compel compliance with the Court's prior Order.  A hearing was held on September 7, 1973.  Thereafter Appellant filed a motion to consolidate its suit with that of the sole private party to file a racial discrimination charge. This party, Mr. Floyd L. Munn, Jr., had filed his charge with the EEOC on June 6, 1969, and had brought suit on August 31, 1972, after receiving a right-to-sue letter from Appellant.

On March 27, 1974, the District Court entered its Order granting Appellee's motion for summary judgment and its motion to strike allegations of racial discrimination and of particular sex discrimination charges, and denying Appellant's motion for consolidation with the Munn private suit.  380 F.Supp. 1106 (W.D.Tenn.1974).

The first issue we face is whether the 1972 amendments to Title VII apply to this case, a ground Appellee urges as sufficient to affirm the Order of the District Court, which did not address the question.  A brief sketch of the background and purposes of the 1972 Act is helpful in answering this question.

Until 1972, the EEOC had no authority to enforce the provisions of Title VII, apart from its role of conciliating disputes between employee and employer. The 1972 amendments were intended to empower the EEOC to enforce Title VII.

The House Report on the 1972 amendments recommended that Congress "grant the Equal Employment Opportunity Commission authority to issue, through well established procedures, judicially enforceable cease and desist orders."  H.R.Rep.No.92–238, 92d Cong., 2d Sess. 1 (1972);  1972 U.S.Code Cong. & Admin.News, p. 2137.  The legislative process, however, resulted in removal of cease-and-desist authority and substituted authorization for the Commission to sue directly in federal court.  The substitution was not an attempt to dilute the provisions of Title VII or to deny the EEOC effective authority to enforce them.  As the Minority Views on the House Report stated,

"[T]he most significant issue that separates the majority of the committee from the minority is not whether the EEOC should be given enforcement authority.  Rather, the issue is: What procedures will insure the most effective enforcement of the substantive provisions of title VII  .   .   .."

1972 U.S.Code Cong. & Admin.News, p. 2168.

The House Minority Views' position that "enforcement of our laws can best be effectuated through our courts,"[1] ultimately prevailed.

In giving the EEOC authority "to prevent any person from engaging in any unlawful employment practice" under section 706(a) of Title VII, 42 U.S.C.A. § 2000e–5(a), Congress specified certain prerequisites to court action:

"If within thirty days after a charge is filed with the Commission   .   .   ., the Commission has been unable to se-

1.  1972 U.S.Code Cong. & Admin.News, p. 2167.

cure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent . . . .."

§ 706(f)(1), 42 U.S.C.A. § 2000e–5(f)(1). Thus, the only pre-suit requirements were to be a 30-day wait after a charge's filing (except for temporary relief available under section 706(f)(2), 42 U.S.C.A. § 2000e–5(f)(2)) and the failure of conciliation efforts.

Fully aware of the substantial backlog of charges pending before the EEOC,[2] Congress explicitly stated in section 14 of the 1972 Act:

"The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter."

Pub.L. No. 92–261, § 14, 86 Stat. 103 (Mar. 24, 1972).

All charges pending with the EEOC on March 24, 1972 were thereby made available as a basis for an EEOC suit.

■ Appellee argues that all the charges which underlie the EEOC's complaint were not "charges" on March 24, 1972, because the charges had passed from the stage of "charges" to the status of "cases" under EEOC Regulations, 35 Fed.Reg. 10110 (1970).[3]

■ Appellee's argument is an exercise in linguistic sophistry. There is no indication in the legislative history that Congress was making the "charge-case" distinction in applying the 1972 amendments to pending "charges." Indeed, the evidence is that Congress intended to give as much protection as possible to aggrieved ·parties and broad authority to a Commission swamped with a backlog of work.[4] See EEOC v. Eagle Iron Works, 367 F.Supp. 817, 820 (S.D.Iowa 1973); EEOC v. Bartenders Local 41, 369 F.Supp. 827, 830 (N.D.Cal.1973). Cf. EEOC v. Christiansburg Garment Co., Inc., 376 F.Supp. 1067, 1073–74 (W.D.Va. 1974).

■ The second issue is whether section 706(f)(1) of Title VII precludes the EEOC from filing suit more than 180 days after a charge is filed with it. The District Court held that the EEOC is so precluded and granted summary judgment for Appellee on the ground that all the underlying charges had been filed with the Commission more than 180 days before the EEOC brought suit. The District Court concluded thusly "with some trepidation in view of the split of authority" among the district courts which had considered the question.[5]

---

**2.** See S.Rep. No. 92–415, 92d Cong., 1st Sess. 5–6, 87 U.S.Code Cong. & Admin.News, p. 2137 (1972); H.R.Rep. No. 92–238, 92d Cong., 1st Sess. 3–5, 12 U.S.Code Cong. & Admin. News, p. 2137 (1972). See also 117 Cong. Rec. 14273 (1971) (remarks of Senator Kennedy); 117 Cong. Rec. 8517 (1971) (remarks of Representative Albert); 117 Cong. Rec. 8459 (1971) (remarks of Representative Martin); 118 Cong. Rec. 697 (1972) (remarks of Senator Dominick); 118 Cong. Rec. 699–70 (1972) (remarks of Senator Fannin); 118 Cong. Rec. 732 (1972) (remarks of Senator Brock); 118 Cong. Rec. 914 (1972) (remarks of Senator Talmadge); 118 Cong. Rec. 947 (1972) (remarks of Senator Allen); 118 Cong. Rec. 1056 (1972) (remarks of Senator Stevenson).

**3.** Under EEOC procedures, a "charge" becomes a "case" after an initial investigation is completed and a case number is assigned. This distinction between a "case" and a "charge" is purely for internal administrative purposes and is clearly not controlling when considering what Congress meant by "charges" in enacting the 1972 amendments.

**4.** See S. Comm. on Labor and Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Sess. 1674 (1972). The letter from the Department of Justice which is cited therein as the basis for section 14 stated, "we see no reason why the many thousands of persons who have filed charges which are still being processed and who have waited as long as 18 months to two years for resolution of them should not have the benefit of the new enforcement authority." The letter is quoted in EEOC v. Christiansburg Garment Co., Inc., 376 F.Supp. 1067, 1074 (W.D.Va.1974). This letter fully rebuts Appellee's argument.

**5.** As of this writing, the following decisions have held that the 180-day provision limits the time within which the EEOC may sue: EEOC v. United States Pipe & Foundry Co.,

Section 706(f)(1), 42 U.S.C.A. § 2000e–5(f)(1), does not on its face limit the EEOC's power to seek court enforcement of Title VII to 180 days from the filing of an administrative charge. In relevant part the section reads,

If within thirty days after a charge is filed with the Commission * * *, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. * * * The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission * * *. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge * * * the Commission has not filed a civil action under this section * * * or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission * * * shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claimed to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. * * * Upon timely application, the court may, in its discretion, permit the Commission

* * * to intervene in such civil action upon certification that the case is of general public importance. * * *

The District Court construed section 706(f)(1) as cutting off the EEOC's right to sue 180 days after the filing of an administrative charge and thereafter limiting the Commission to permissive intervention in a private suit. The arguments the District Court gave for its construction were that Congress intended speedy disposition of charges, that "a time restriction (180 days) is a part of a statutory scheme of controlled time frames," and that the 180-day restriction would not hinder Title VII's enforcement "since new charges may be filed or an aggrieved individual may sue in his own right and on a class action basis."

We reject the District Court's conclusion and join the two other Circuit Courts to have decided this issue. EEOC v. Cleveland Mills Co., 502 F.2d 153 (4th Cir. 1974); and EEOC v. Louisville & N. R.R., 505 F.2d 610 (5th Cir. 1974).

The statute does not expressly limit the period within which the EEOC may sue to 180 days from the filing of a charge. In one sentence of section 706(f)(1) the EEOC is authorized to sue to enforce Title VII if after thirty days from a charge's filing a conciliation agreement has not been reached. In a later sentence the EEOC is required to notify a charging party when an agreement has not been reached 180 days after the charge's filing, and the private party is then authorized to sue. Authorization for a private suit does not expressly deprive the EEOC of power to sue.

375 F.Supp. 237 (N.D.Ala.1974); EEOC v. Union Oil Co. of California, 369 F.Supp. 579 (N.D.Ala.1974); EEOC v. Container Corp. of America, 352 F.Supp. 262 (M.D.Fla.1972); EEOC v. General Dynamics Corp., 382 F.Supp. 59 (N.D.Tex.1974).

Decisions which have held to the contrary include EEOC v. Louisville & N. R.R., No. 74–1185, 505 F.2d 610 (5th Cir. 1974), rev'g 368 F.Supp. 633 (N.D.Ala.1974); EEOC v. Cleveland Mills Co., 502 F.2d 153 (4th Cir. 1974), rev'g 364 F.Supp. 1235 (W.D.N.C.1973); EEOC v. U. S. Industries, Civil No. 73–283 (W.D.Tenn. Jan. 3, 1974); EEOC v. Christians-

burg Garment Co., 376 F.Supp. 1067 (W.D.Va. 1974); EEOC v. E. I. duPont de Nemours & Co., 373 F.Supp. 1321 (D.Del.1974); EEOC v. Hickey-Mitchell Co., 372 F.Supp. 1117 (E.D. Mo.1973); EEOC v. Huttig Sash & Door Co., 371 F.Supp. 848 (S.D.Ala.1974) appeal docketed, No. 74–1493 (5th Cir. Feb. 21, 1974); EEOC v. Bartenders Local 41, 369 F.Supp. 827 (N.D.Cal.1973); EEOC v. Eagle Iron Works, 367 F.Supp. 817 (S.D.Iowa 1973); EEOC v. Duff Brothers, 364 F.Supp. 405 (E.D.Tenn. 1973); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973); EEOC v. Western Electric Co., 382 F.Supp. 787 (D.Md.1974).

It is by judicial amendment that the 180-day provision has been read to cut off the EEOC's enforcement powers. If Congress had intended to cut off the Commission's right to sue after 180 days from a charge's administrative filing, it should and would have done so expressly. *Cf.* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Indeed, Congress expressly limited the time within which a private party may sue. The private party has only ninety days to bring suit after the Commission's dismissal of the administrative charge, after 180 days from the filing of the charge, or after "the expiration of any period of reference under subsection (c) or (d)" of section 706. The Commission is not bound by such an express time limitation.

■ A statute, of course, should always be read in conjunction with its evident purposes. When we look behind the silent face of the statute, we find clear congressional intent not to restrict the EEOC's enforcement powers to within 180 days of a charge's filing.

Through its 1972 amendments to Title VII, Congress intended to strengthen the EEOC's role of conciliator and to give it the task of enforcer. The House Report on the amendments stated that the "voluntary approach currently applied has failed to eliminate employment discrimination," 1972 U.S.Code Cong. & Admin. News, p. 2139, and the Minority Views on the House Report concur in this observation, 1972 U.S.Code Cong. & Admin. News, p. 2167.[6] Furthermore, Congress "hoped that recourse to the private lawsuit will be the exception and not the rule and that the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General, as appropriate." Joint Conference Committee, Section-by-section Analysis, 118 Cong.Rec. 3462 (Mar. 6, 1972).

The EEOC's added enforcement authority was not, however, intended to supplant the heavy reliance on conciliation as a preferred method for eradicating employment discrimination. As the March 8, 1972 Conference Report stated, "Only if conciliation proves to be impossible do we expect the Commission to bring an action in federal district court to seek enforcement." 118 Cong.Rec. 1861 (1972).

We cannot reconcile Congress' dual directive that the EEOC attempt to conciliate employment discrimination claims and that it carry a heavy judicial enforcement burden with a 180-day limitation on the Commission's right to sue. Such a limitation would restrict conciliation efforts to within a period of fewer than 180 days after the filing of a charge. It is precisely in the type of case where the EEOC might ultimately decide to sue—where widespread discrimination of a systematic or subtle nature is involved—that effective conciliation attempts may well require more than six months. In such cases, discussion will be necessary with labor unions and company personnel, expert consultants may be involved, and the charging parties must be kept fully informed of the progress of negotiations. Forcing the EEOC to break off conciliation efforts 180 days after the filing of a charge for fear of losing the right to sue would frustrate the congressional mandate that conciliation efforts be fully undertaken before resort to the courts.

Construing the 180-day provision as a statute of limitations is also flatly in conflict with section 14 of the 1972 Act, which made the amendments effective as to charges then "pending" with the Commission. It is clear that many of the pending charges on the basis of which Congress intended to allow the EEOC to sue had been pending from 18 to 24 months.[7] Application of the 180-day provision as Appellee urges would bar usage of these charges as a basis for

6. *See also* 118 Cong.Rec. 696 (1972) (remarks of Senator Dominick, introducing amendments which eventually became the basis for the EEOC's enforcement powers).

7. *See* text *supra* at n. 4.

suit—private or public—despite explicit congressional intent that two-year-old charges "have the benefit of the new enforcement authority."[8]

The fallacy of Appellee's position becomes clear when the following fact is recognized: if the 180-day provision limits the EEOC's time to bring suit on an individual charge, the EEOC could raise the same issues and seek the same relief it does here simply by having a fresh charge filed with it. When a court is urged to read a procedural technicality into a statute which will have no impact on the rights of any party and which can easily be complied with, the court should hesitate to infer such a requirement from the statute. The Supreme Court has rejected arguments similar to Appellee's in regard to the inter-relationship of state and federal agency consideration of a charge, Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), and the need for a Commission's finding of reasonable cause as a prerequisite to private suit, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As the Court stated in *Love*, "To require a second 'filing' by the aggrieved party, after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality." 404 U.S. at 526, 92 S.Ct. at 619. Requiring refilings or new filings in this case would similarly serve no valid purpose. In giving Title VII the same construction as the Supreme Court gave it in *McDonnell Douglas Corp.*, we are struck by the pertinence of this statement:

> The Act does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause, and we will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts.

411 U.S. at 798–99, 93 S.Ct. at 1822. We find in the 1972 amendments no express 180-day limitation on the EEOC's right to sue, and we will not imply a requirement that would merely delay or frustrate the Commission's authority to seek judicial enforcement of Title VII.[9]

The 180-day provision of course, has its purpose. It expressly prevents a private party from bringing suit until the EEOC has had 180 days to negotiate a conciliation agreement, unless other events occur sooner as specified in section 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). Before 1972, a private party satisfied the jurisdictional prerequisites to suit "(i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Because conciliation efforts had often taken two to three years to institute, thereby delaying issuance of the right-to-sue notice, the 180-day provision was inserted to provide

---

**8.** *See* text *supra* at n. 4.

**9.** An understandable concern of employers is that without the 180-day limit, the EEOC may sue indefinitely based on a single charge, however stale and ancient.

It is not unusual for a provision authorizing the federal government to enforce constitutional rights to have no statute of limitations attached. The public accommodations and public facilities sections of the 1964 Civil Rights Act, 42 U.S.C.A. §§ 2000a et seq., and 2000b et seq., contain no time limit for suit. *See also* United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1960); United States v. DeQueen & Eastern R.R., 271 F.2d 597 (8th Cir. 1959).

Use of a truly "stale" charge will mean that injunctive relief is probably unwarranted under traditional equitable principles. Furthermore, Congress has expressly limited employers' liability for back pay to two years of a charge's filing. 42 U.S.C.A. § 2000e–5(g). Thus, we see no cause for concern over the absence of a statute of limitations. Indeed, so long as employment discrimination and the effects of past employment discrimination persist, a time limit for suit seems unwarranted. In any event, this is a decision for Congress, which in our view has decided not to impose a time limit on EEOC suits.

the aggrieved party a means by which he may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process.

\* \* \* \* \* \*

The bill provides that an aggrieved person's right to institute a private action should be reactivated under certain circumstances where the Commission does not act promptly after issuing a complaint. Section 715(a) provides that an aggrieved person may bring an independent action against the respondent if the Commission has not issued its order within 180 days. The committee believes that aggrieved persons are entitled to have their cases processed promptly and that the Commission should develop its capacity to proceed rapidly to hearing and decision once the complaint is issued. The committee recognizes that it will not be possible to render a decision in all cases within the time limit prescribed. The complexity of many of the charges and the time required to develop the cases, is well recognized by the committee. It is assumed that individual complainants, who are apprised of the need for the proper preparation of a complex complaint involving multiple issues and extensive discovery procedures, would not cut short the administrative process merely to encounter the same kind of delays in a court proceeding. It would, however, be appropriate for the individual to institute a court action where the delay is occasioned by administrative inefficiencies. The primary concern must be protection of the aggrieved person's option to seek a prompt remedy in the best manner available.[10]

The 180-day provision survived in the Act's final form, though the House Report's proposal to give the EEOC authority to issue cease-and-desist orders did not. The 180-day provision's purpose is served under the present law by protect-ing the private party from undue administrative delay during the conciliation stage, guaranteeing the right of private suit six months after a charge is filed.

In summary, we find that the 180-day provision was not intended to hamper the EEOC's ability to enforce Title VII but rather was meant to guarantee private parties prompt recourse to the courts after a reasonable period of conciliation efforts. The EEOC is not barred from basing a complaint on a charge filed more than 180 days prior to the EEOC's suit. The District Court's contrary conclusion is erroneous, and its Order must be reversed in this respect.

Appellee urges affirmance of the dismissal of Appellant's complaint, nonetheless, on the ground that Tennessee's one-year statute of limitations bars the EEOC's complaint.

We agree with the District Court that a state statute of limitations does not run against the EEOC in this case. The EEOC alleges company practices that violate Title VII. If its complaint is well-founded, it will be entitled to relief that will protect the interests of past, present, and future employees of Appellee, so that Appellant represents the interests of individuals who are not among the charging parties. Furthermore, the eradication of discrimination by race and sex promotes public interests and transcends private interests. Each step along the road to equal employment opportunity takes us closer to the goal of a truly open society, confining individuals only within boundaries set by their own talents and determination. As we wrote in Blue Bell Boots, Inc. v. EEOC, 418 F.2d 355, 358 (6th Cir. 1969), "Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties." Thus, the EEOC represents the public interest when it sues to enforce Title VII, not solely the interests of the private charging parties. In the absence

10. H.R.Rep.No.92–238, 92d Cong., 1st Sess. (1972), 1972 U.S.Code Cong. & Admin.News, pp. 2147–2148.

of congressional intent to apply state statutes of limitations, such restrictions do not apply to the EEOC.[11] United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); EEOC v. Christiansburg Garment Co., Inc., 376 F.Supp. 1067, 1071–73 (W.D.Va. 1974); EEOC v. Laacke & Joys Co., 375 F.Supp. 852, 853 (E.D.Wis.1974); EEOC v. Eagle Iron Works, 367 F.Supp. 817, 823–24 (S.D.Iowa 1973); EEOC v. Duff Brothers, Inc., 364 F.Supp. 405, 406–07 (E.D.Tenn.1973).

The District Court held that two sets of charges (the "Dunavan" and "Williams group" charges) were available as a basis for the EEOC's suit but for its conclusion on the 180-day provision. Since we reject the District Court's construction of that provision and find no alternative basis for affirming the dismissal of Appellant's complaint, we must reverse the District Court's Order and reinstate the EEOC's complaint.

The District Court did not rest its conclusion solely on the 180-day provision. Instead, it addressed the availability of the particular charges on which Appellant grounded its complaint and held that the "Meek group" and "Munn" charges were barred from full consideration. Since the treatment of particular charges has an important bearing on the scope of the issues the EEOC may raise on remand, we will address the treatment of each charge.

Appellee urges that the "Dunavan" and "Williams group" charges are not available as a basis for suit by the EEOC.

The "Dunavan" charge is a sex discrimination claim filed with the EEOC on February 17, 1971, and amended on April 26, 1971. A determination of reasonable cause to believe the charges are true was made on August 17, 1971. Appellee argues that there was no conciliation of this charge as required by Title VII. A review of the record, however, establishes that conciliation was attempt-ed. The Dunavan charge is available as a basis for the EEOC's suit.

■ Appellee argues that the "Williams group" of sex discrimination charges is not available because Appellant did not notify it that conciliation had failed and was terminated before bringing suit, as required under EEOC Regulations, 29 C.F.R. §§ 1601.23, 1601.-25.

■ The EEOC should, of course, follow its own procedures as it conciliates charges, in the hopes of avoiding suit. Notice that conciliation has failed gives an employer "one last chance to alter its position with regard to the issues being discussed during conciliation with the knowledge that the statutory scheme provides for litigation as the next step." EEOC v. Louisville & N. R.R., 368 F.Supp. 633, 638 (N.D.Ala.1974), rev'd, 505 F.2d 610 (5th Cir. 1974).

The lack of notice that conciliation had failed on the "Williams group" charges, however, did not prejudice Appellee. The record shows that Appellee was given a proposed conciliation agreement on these charges but rejected it. Thereafter, conciliation continued on the Dunavan and "Meek group" charges, but was similarly unproductive. On December 4, 1972, notice was sent that conciliation had failed on the Dunavan and "Meek group" charges. Thus, Appellee was apprised of the imminence of suit concerning sex discrimination charges prior to Appellant's suit. It suffered no significant prejudice by not being notified of the failure of conciliation on the "Williams group" of charges as well, since these charges concerned substantially identical issues of company practices.

■ When an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action. Instead, the error should be considered harmless. American Farm Lines v. Black Ball

**11.** *See Note*; "A Limitation on Actions for Deprivation of Federal Rights," 68 Colum.L.Rev. 763, 771

Freight Service, 397 U.S. 532, 537–39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); Sun Oil Co. v. Federal Power Commission, 256 F.2d 233, 239 (5th Cir. 1958); NLRB v. Selwyn Shoe Mfg. Corp., 428 F.2d 217, 224 (8th Cir. 1970). This is the rule especially when the agency is not itself adjudicating but is conducting pre-adjudication activities. Hannah v. Larche, 363 U.S. 420, 422, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). *Cf.* Cunningham v. Litton Industries, 413 F.2d 887, 890 (9th Cir. 1969). The "Williams group" of charges, therefore, was available as a basis for the EEOC's suit.

The District Court ruled that the "Meek group" of charges was not a proper independent basis for the EEOC suit. This group of charges, filed in 1971, alleges discriminatory lay-offs of female employees in 1965 and 1966 and Appellee's refusal to restore credit for the period of the lay-offs as agreed in a 1967 settlement of a class action suit.

The District Court held that the 1967 court-approved private settlement prevented the EEOC from "assert[ing] a later cause of action either to undo or to obtain greater relief than was accorded to those plaintiffs under the [settlement] order," and it granted summary judgment in part. The Court held, however,

Plaintiff herein may pursue its action with regard to sex discrimination charges after 1967 without regard to a bar of res adjudicata. The evidence as to circumstances of the 1965 lay-off may be relevant, moreover, to a claimed pattern of sex employment discrimination.

Appellant argues that the District Court's decision represents a "fundamental misconception" of the relationship between a private suit and EEOC action and urges correction of the District Court's holding that the EEOC was a "privy" to the plaintiffs who signed the 1967 settlement agreement.

We agree with Appellant that it was not "privy" to the 1967 settlement and that it is not barred by principles of collateral estoppel or res judicata from relying on pre-1967 events alleged by the "Meek group" of charges as a basis for its complaint. The EEOC never agreed to the 1967 settlement. As we stated above, the EEOC sues to vindicate the public interest, which is broader than the interests of the charging parties. The 1967 settlement and the November 10, 1972 signing of waivers and releases by the Meek group may well limit the scope of relief that the EEOC may seek for the "Meek group's" private benefit. *Cf.* United States v. Georgia Power Co., 474 F.2d 906 (5th Cir. 1973). But the EEOC is not barred by the doctrine of res judicata from basing its complaint on charges of discrimination which it never agreed to settle.[12] Williamson v. Bethlehem Steel Corp., 468 F.2d 1201, 1203–04 (2d Cir. 1972); EEOC v. Eagle Iron Works, 367 F.Supp. 817, 822 (S.D.Iowa 1973).

Our holding on this point may be of limited significance in this case, since the "Dunavan" and "Williams group" charges form an adequate basis for an EEOC suit alleging sex discrimination by Appellee. As we held in Tipler v. E. I. duPont deNemours and Co., 443 F.2d 125, 131 (6th Cir. 1971), the EEOC may raise issues based on a charge limited only by "the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." A full investigation of Appellee's employment practices in regard to sex discrimination is warranted on the basis of the "Dunavan" and "Williams group" charges. Our holding as to the "Meek group" is

---

**12.** A contrary holding would conflict with Congressional intent. *See, e. g.,* remarks of Senator Dominick, introducing amendments which eventually became the basis for section 706(f)(1), that the EEOC, not private parties, "would have complete authority to decide which cases to bring to Federal district court." 118 Cong.Rec. 698 (Jan. 21, 1972).

We note, furthermore, that EEOC Regulations prevent withdrawal of a charge without the EEOC's consent. 29 C.F.R. § 1601.9. Appellant's consent was not obtained for the withdrawal of the "Meek group's" charges or the settlement of their claims.

intended simply to insure that a full review will in fact be made and to provide guidance for the courts of the Circuit.[13]

The "Munn" charge is the only one filed with the EEOC that alleges racial discrimination by Appellee. Mr. Floyd A. Munn, Jr., filed his charge with the Commission on June 6, 1969, and amended it on April 20, 1970. On May 12, 1972, the EEOC issued a finding of reasonable cause to believe the charges were true, and on July 24, 1972, it issued Munn a right-to-sue notice. On August 31, 1972, Munn filed a private class action. On February 2, 1973, the EEOC filed its complaint, alleging sex and racial discrimination by Appellee, and on March 4, 1974, it moved to consolidate Munn's private suit with its own.

The District Court held that the prior filing of Munn's complaint restricted Appellant to the right of permissive intervention in the private suit, under section 706(f)(1) of Title VII, 42 U.S.C.A. § 2000e–5(f)(1) quoted *supra* at p. 1356. Thus, the District Court granted Appellee's motion to strike all allegations of racial discrimination from Appellant's complaint, without prejudice to a later suit on an appropriate racial discrimination charge or to Appellant's right to seek intervention in the Munn suit. The District Court further denied Appellant's motion to consolidate.

■ Although section 706(f)(1) does not explicitly limit the EEOC to permissive intervention once a private suit is brought, the section does specify a particular route by which the EEOC may enforce Title VII in that circumstance:

> Upon timely application, the court may, in its discretion, permit the Commission . . . to intervene in [a private] civil action upon certification that the case is of general public importance.

The specification of a particular method of review is said to preclude the use of unspecified methods, under the maxim *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of another thing."[14]) *See* National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); Botany Worsted Mills v. United States, 278 U.S. 282, 288–89, 49 S.Ct. 129, 73 L.Ed. 379 (1929); Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 22, 19 S.Ct. 77, 43 L.Ed. 341 (1898); Sturges v. Collector, 79 U.S. (12 Wall.) 19, 27, 20 L.Ed. 255 (1870). This phrase is, of course, a rule of thumb to interpreting legislative intent rather than a principle of law.

The Congressional purpose behind the sentence authorizing permissive intervention in private suits is evident from the House Report, which recommended cease-and-desist authority for the EEOC:

> The committee was concerned about the interrelationship between the newly created cease and desist enforcement powers of the Commission and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for termination of Commission jurisdiction once a private action has been filed (except for the power of the Commission to intervene in the private actions). It contains as well a provision for termination of the right of private action once the Commission issues a complaint or enters into a conciliation or settlement agreement which is satisfactory to the Commission and to the person aggrieved.

H.R.Rep. No. 92–238, 92d Cong., 2d Sess., 1972 U.S.Code Cong. & Admin. News, at p. 2148.

13. We need not decide whether the EEOC's failure to issue a determination of reasonable cause concerning the "Meek group's" charges bars EEOC reliance thereon. We note, however, that section 706(f)(1) appears to set forth the sole prerequisites to EEOC reliance on a charge as a basis for suit, that the Supreme Court rejected a closely related contention in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and that our discussion of the "Williams group" charges is relevant to this issue.

14. J. Ballentine, Ballentine's Law Dictionary 442 (3d ed. 1969).

Although cease-and-desist authority for the EEOC was eventually rejected, the House and Senate Conference produced section 706(f)(1), adopting the same reasoning as contained in the quoted excerpt of the House Report:

The conferees adopted a provision allowing the Commission, or the Attorney General in a case against a state or local government agency, to bring an action in Federal district courts if the Commission is unable to secure from the respondent "a conciliation agreement acceptable to the Commission." Aggrieved parties are permitted to intervene. They may bring a private action if the Commission or Attorney General has not brought suit within 180 days or the Commission has entered into a conciliation agreement to which such aggrieved party is not a signatory. The Commission, or the Attorney General in a case involving state and local governments, may intervene in such private action.

Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92d Cong. 2d Sess., 1972 U.S.Code Cong. & Admin.News, at p. 2182.

From these Reports it is evident that Congress meant to prevent duplicitous proceedings by limiting the EEOC to the right of permissive intervention in a private action, when the EEOC's action parallels that of the private party, raising no substantially different issues and seeking no relief other than for the private party.

The Congressional intent that duplicitous proceedings be avoided does not mean, however, that the EEOC should be limited to permissive intervention in a private suit when its investigation on the one charge has disclosed a number of violations which require judi-

cial attention. As we held in Tipler v. E. I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir. 1971):

[T]he [EEOC's] complaint . . . is only limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.

If it appears that the EEOC investigation of the Munn charge could reasonably have been expected to disclose that company practices had a racial impact extending beyond Munn's particular situation, the EEOC was entitled to bring its own suit based on its investigation's revelations.

The EEOC's suit encompasses allegations that extend beyond Munn's private complaint, both in the scope of concern and in the extent of relief sought. Thus, it would not be duplicitous to allow both Appellant's and Munn's suits to proceed, though consolidation might be thought appropriate. Indeed, allowing the EEOC to assert its own cause of action alleging racial discrimination furthers the basic purpose of the 1972 amendments to Title VII—to give the EEOC authority to prevent violations of Title VII.[15]

The District Court erred, therefore, in striking allegations of racial discrimination from Appellant's complaint and in denying its motion to consolidate on this basis. On remand, the District Court should reconsider Appellant's consolidation motion under Rule 42(a), F.R.Civ.P. See Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); De Figueiredo v. TWA, Inc., 322 F.Supp. 1384 (S.D.N.Y. 1971); Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966).

The judgment of the District Court is reversed, and the cause is remanded for further proceedings in conformity with this opinion, to be held promptly in accordance with 42 U.S.C. § 2000e–5(f)(5).

---

15. We respectfully disagree with the Eight Circuit's conclusion in EEOC v. Missouri Pacific R.R., 493 F.2d 71 (8th Cir. 1974). As Judge Heaney points out in his concurrence in that case, 493 F.2d at 75, a grant of permissive intervention does not guarantee that the EEOC will be able to raise issues that have arisen in the investigation of a claim on which the private party has sued, when the issues the EEOC seeks to litigate are not raised by the private party. We believe the remedy for this is not to expand the concept of intervention beyond its normal meaning, but to allow the EEOC to bring suit based on the findings that its investigation warrants.