**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**UNION OIL COMPANY OF CALIFORNIA, Defendant.**

Civ. A. No. 73–666.

United States District Court,
N. D. Alabama, S. D.

Jan. 15, 1974.

William A. Carey, for plaintiff.

A. H. Gaede, Jr. and James P. Alexander, Bradley, Arant, Rose & White, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

POINTER, District Judge.

The EEOC filed this action against Union Oil for alleged unlawful employment practices proscribed by Title VII of the Civil Rights Act of 1964, premising its standing upon the amendments to Section 706 thereof by the Equal Employment Opportunity Act of 1972 (P.L. 92–261; 42 U.S.C.A. § 2000e–5). The Company has moved for summary judgment on the basis of the following undisputed sequence of events pertinent to this litigation:

| | | |
|---|---|---|
| Dec. | 12, 1968 | John Runner discharged by company |
| Jan. | 3, 1969 | Charge filed by Runner with EEOC |
| Apr. | 21, 1969 | Charge perfected by sworn statement [1] |
| Apr. | 25, 1969 | Charge served on company |
| Jan. | 25, 1972 | Last Conciliation conference |
| Mar. | 24, 1972 | Effective date of P.L. 92–261 |
| Mar. | 30, 1972 | Notice by EEOC to company of inability to obtain voluntary compliance; right-to-sue letter mailed by EEOC to Runner |
| Apr. | 28, 1972 | Suit filed by Runner for self and class |
| Jul. | 16, 1973 | Suit filed by EEOC |

Three alternative arguments are urged by the Company in support of its motion: (1) the EEOC's right to sue terminated or became barred on the expiration of 180 days after Runner's charge was filed.[2] (2) The EEOC's right to sue terminated on the filing of Runner's own suit for himself and his class.[3] (3) The action is barred by Alabama's one year statute of limitations.

The court, after considering at length and in detail the contention of the parties on each of these issues, has concluded—though not without some doubt—that the company is correct on each point. While a conclusion favorable to the company on any one of them would have been decisive on the summary judgment motion, the court, at the request of the EEOC, has chosen to address itself to all three to enable a more meaningful appellate resolution of these problems.

## I. 180-DAY ISSUE.

 The Company contends that the following language from the amended act requires the EEOC to file suit, if at all, within 180 days from the filing of a charge with it:

> If within thirty days after a charge is filed with the Commission * * *, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent * * * named in the charge. * * * The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission * * *. If * * * within one hundred and

---

1. The company has not raised the point that the charge, if considered as filed when finally perfected, would have been filed after the 90 days allowed under Title VII prior to the 1972 act.

2. Under the facts of this case the defendant suffers no disadvantage by conceding that, as to charges pending at the enactment of the 1972 amendments, the 180 days could run from March 24, 1972, the effective date of the act. See Section 14 of P.L. 92–261.

3. Note that on November 26, 1973, the Runner case was settled with an order dismissing his individual claims with prejudice. The court permitted dismissal of the action only after being satisfied that, due to lack of numerosity, the case could not be maintained as a class action and, of course, directed that the dismissal be without prejudice to the rights of any individuals other than Runner. In view of the other conclusions reached in this memorandum, it is unnecessary to speculate on the res adjudicata aspects of the dismissal of Runner's claim, which, incidentally, appears to be the sole charge upon which the EEOC's interest is based.

eighty days from the filing of such charge * * * the Commission has not filed a civil action under this section * * * or [and —?] the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission * * * shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. * * * Upon timely application, the court may, in its discretion, permit the Commission * * * to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending * * * further efforts of the Commission to obtain voluntary compliance. § 706 (f)(1).

To date, this issue has been dealt with by seven other district courts, one court [4] agreeing with the company's position and six [5] ruling with the EEOC. Meritorious arguments can be made on both sides.

Arguments [6] supportive of the EEOC's position can be summarized as follows:

(1) The amendment gives the EEOC the right to sue without any explicit maximum limitation or cut-off date. The only restriction on its right to sue is satisfaction of a condition precedent; namely, the inability to secure an acceptable conciliation agreement within thirty days after the charge is filed.

(2) Congress obviously knew how to phrase a cut-off restriction if one was intended, for in the very same subsection of the amendment, it placed such an explicit limitation on an individual's right to sue.

(3) To imply a limitation would be contrary to the purpose for the amendment. The stated purpose as shown in the title of the amendment, was to "further promote equal employment opportunities". Numerous references in the legislative history clearly demonstrate Congress' desire for more complete progress in achieving this objective, and its belief that individual lawsuits were inadequate vehicles to attain such goals. The legislative hope "that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC", 118 Cong. Rec. H1863 (Mar. 8, 1972), made with the awareness of the massive number of complaints then pending before the EEOC, would be frustrated by an interpretation which would, as a practical matter, require any litigation on

4. EEOC v. Cleveland Mills Co., 364 F.Supp. 1235 (W.D.N.C.1973) (180 day statutory period is a part of the created right in the EEOC to bring suit).

5. EEOC v. Duff Bros., Inc., 364 F.Supp. 405 (E.D.Tenn.1973) (no language in Act that could properly be interpreted as a limitation; contrary to legislative purposes of 1972 amendments); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973) (defendant's interpretation patently frivolous; no final time within which EEOC must sue); EEOC v. Bartenders Intern'l, 369 F.Supp. 827 (C.D.Calif.1973) (180 day period is only a period in which private party must wait; does not define period in which EEOC

must sue); EEOC v. Hickey-Mitchell Co., 6 EPD ¶ 8962 (E.D.Mo.1972) (180 day period not a statute of limitations; not explicitly established by Act); EEOC v. Eagle Iron Works, 6 FEP (S.D.Io.1973) (defendant's position requires a tortuous reading of the Act and ignores legislative history); EEOC v. U. S. Industries, Inc., Case No. 73–283 (W.D.Tenn. Jan. 2, 1974) (unpublished order).

6. In part the arguments attributed in this opinion to the EEOC and to the company were not actually made by the parties, but represent the results of the court's own study of the issue.

most of these charges to be instituted, if at all, by private parties.

(4) The interest of Congress in speed was essentially directed at the plight of aggrieved parties whose charges were bogged down in administrative backlogs. This concern is satisfied by the change which gives a frustrated employee a right to sue after 180 days without having to wait for the Commission to give up its efforts, as was previously the situation.

(5) The amendment recognized that speed was not always possible. Thus, in amended section 706(b) the Commission was to make its determination on reasonable cause "as promptly as possible and, so far as practicable, not later than" 120 days after filing of the charge. With Congress recognizing that in some cases the determination as to reasonable cause could not be made until after 120 days from filing, it certainly would not have intended that in such cases the Commission would have less than sixty days to "endeavor to eliminate any such alleged unlawful employment practice by informal conference, conciliation, and persuasion" and then to file its lawsuit if no acceptable agreement were secured.

(6) Speed was only one concern; effectiveness of the procedures had at least as great a priority. The granting to individuals of an opportunity to sue should not be seen as automatically curtailing the EEOC's powers; rather this should be construed as an additional option for correction of unlawful practices. According to the Conference Report, "it is necessary that *all avenues* be left open for quick and effective relief" and the retention of the private right of action allows "the person aggrieved *to elect* to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution". 118 Cong.Rec. H1862–63 (Mar. 8, 1972) (emphasis added). If

there were no longer any power in the EEOC to sue after the 180 days, it would hardly be an "election" on the part of the aggrieved party whether to pursue personally his remedy—it would have been the only remedy left.

(7) The suggestion that new charges could be filed to reactivate a continuing case of discrimination would result in still further delays during administrative processing and, insofar as the procedure for charges filed by a member of the Commission itself, is impractical in view of its workload.

(8) Under the company's contention all suits would have to be brought within 570 days (where a local anti-discrimination law) or 450 days (where no local law) from the date of the unlawful employment practice. See Section 706(e)(f). Such a requirement would render unnecessary and meaningless the provision in Section 706(g) which limits back pay to a period of not more than two years prior to the filing of a charge.

(9) Earlier drafts of the legislation (involving possible administrative proceedings before the EEOC) had provided a similar time sequence but had additionally contained language— not found in the final version—which explicitly would have cut off the EEOC's powers under certain circumstances after the 180 day period had run. Thus, the mere presence of a time sequence was not considered as automatically imposing a cut-off on the EEOC's jurisdiction.

According to the company the 180 day restriction need not meet the more stringent legal requirements for construction as a statute of limitations. Rather, it is a restriction built into a statute which creates an action unknown at common law and is therefore an indispensable condition of the action which it permits. Simon v. United States, 244 F.2d 703, 705 (CA5 1957); United States v. McCord, 233 U.S. 157, 162, 34 S.Ct. 550, 58 L.Ed. 893 (1914). Arguments support-

ive of the company's construction of the amendment can be summarized as follows:

(1) Such a restriction is implicit from the statutory scheme which establishes consecutive controlled time frames and cross rights of intervention. The individual, whose "rights to redress are paramount under the provisions of Title VII," 118 Cong.Rec. H1863 (Mar. 8, 1972), is certainly limited in the time to bring suit. Genovese v. Shell Oil Co., 488 F.2d 84 (1973). Congress would hardly have intended for a secondary interest to have greater protection than the primary interest.

(2) A time limitation is needed to assure speedy disposition of charges of discrimination, a goal repeatedly expressed in the legislative history and manifested in the act itself, such as in the provisions directing that the courts expedite such resulting litigation in every way. See Section 706(f)(4, 5); 118 Cong.Rec. S2282 (Sen. Javits and Sen. Dominick).

(3) At no point in the legislative history is there a statement that the EEOC could sue after the 180 days, while there are two uncontroverted statements indicating an understanding that the EEOC would have no such power:

> The amendment contains several cosmetic differences from the original amendment as well as one substantial change which reduces the time period within which the Commission may file a civil action against the respondent from 180 days to 150 days from the time the Commission first issues its informal charge. 118 Cong.Rec. S1307 (Feb. 7, 1972) (Sen. Dominick).

> Let us understand that we are dealing with a period of approximately 150 days, that that is the allowable time for the Commission to move into a given situation. The first 30 days represents an effort to conciliate, making a total of 6 months. So

that is the Commission operation. 118 Cong.Rec. S1800 (Feb. 15, 1972) (Sen. Javits, speaking for a proposed substitute which involved a comparable time sequence).

(4) The concern of Congress that justice delayed may be justice denied is aggravated by an interpretation giving the EEOC unlimited time to sue. Allowance of such a tardy lawsuit would, moreover, as a practical matter interrupt any pending private actions, which, at the direction of Congress, are to be expedited by the courts, subject to intervention only on "timely" application, and subject to a stay order for further conciliation for a maximum of 60 days.

(5) The amendment was adopted with a concern not only for the individual employee, but also for the respondents: "The conferees spent considerable time dealing with the detailed provisions covering the procedure for filing and processing charges of discrimination brought by individuals who feel they have been unfairly treated because of their race or their sex. An effort was made to insure a speedy and an equitable resolution of such charges which is in the interest of both the employee and the respondent employer or labor union." 118 Cong.Rec. H1861 (Mar. 8, 1972)

(6) The unlimited retention of jurisdiction over a charge would lull aggrieved persons into inaction to their detriment. With a cut-off point, persons distressed about their employer's practices will know when they can no longer count on action by the EEOC and thereby decide whether to act on their own to seek relief. This is true not only as to persons filing a charge, but also as to others who may be delaying the filing of charges while the EEOC is handling an existing complaint.

(7) Congress considered an amendment which would have prohibited individual suits from being maintained as class actions. The rejection of this proposal is consistent with an under-

standing that the private suit was to be the only available remedy after passage of the 180 days.

(8) The protection given employers under Section 706(g) by limiting back pay awards to periods of not more than two years prior to the filing of the charge is illusory if no limitation is placed on when an action must be filed in connection with such charge.

(9) A time limitation will not hinder the eradication of employment discrimination. If such discrimination continues after the period, new charges will be filed by an aggrieved person or a member of the Commission itself. The attention of the parties and, if necessary, of a court will then be focused on the situation as it then exists and not on a prior state of facts. Preoccupation with stale charges is calculated to frustrate, not aid, the processes for eliminating discrimination. In appropriate cases, the Commission may still be able to bring a pattern and practice action under amended section 707.

The arguments are rather evenly balanced, not merely in number but, more significantly, in persuasive effect. They can hardly be reconciled or synthesized. Much of the difficulty no doubt is attributable to the fact that the final version of P.L. 92–261 was the result of eleventh hour changes, explaining why, as Judge Jones stated in the *Cleveland Mills* opinion, it "leaves much to be desired in clarity and precision." This also explains, at least in part, why the legislative history is subject to varying interpretations.

Were this case the first in this district to involve this issue, I would tend to lean, albeit with much uncertainty, towards the position espoused by the EEOC. However, in this same district the company's position was adopted in a quite similar case. See unpublished Memorandum Opinon by Judge Hancock

in EEOC v. Louisville & Nashville Railroad Co., 368 F.Supp. 633, 1974. Given the closeness of the question and the need for consistency with a particular district, I have no reservation in adopting the same conclusion; namely, that the EEOC must file an action under amended Section 706(f) within 180 days from the filing of the charge. As to charges pending on the effective date of the 1972 amendments, I conclude, in view of Section 14 of P.L. 92–261, that filing should be considered as March 24, 1972. The case *sub judice* was filed too late.

## II. PENDENCY OF PRIVATE ACTION.

 The company contends that, in any event, the EEOC's right to sue under Section 706(f)(1) terminates when a private party files suit under the same section. This issue appears to be one of first impression not only in this circuit, but also throughout the court system.[7]

Many of the arguments respecting the 180 days period, summarized in the preceding portion of this opinion, have a bearing on this issue. The legislative history, however, manifests an unmistakable intent to avoid duplicate proceedings. The original bills in both House and Senate contained explicit provisions to accomplish this objective and were explained as follows:

> The committee was concerned about the interrelationship between the newly created cease and desist enforcement powers of the Commission and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for termination of Commission jurisdiction once a private action has been filed (except for the power of the Commission to intervene in the private actions). It contains as well a provision for termination of the right of private

---

7. In the reverse situation, where the EEOC filed suit prior to that filed by the individual, the court dismissed as duplicitous the private litigant's action. See unpublished opinion, Crump v. Wagner Elec. Co., CA 73–C–346 (E.D.Mo., Aug. 9, 1973).

action once the Commission issues a complaint . . . . Report of House Committee on Education and Labor, June 2, 1971, accompanying House Bill 1746.

The Committee is concerned, however, about the interplay between the newly created enforcement powers of the Commission and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill therefore contains a provision for cutoff of the Commission's jurisdiction once the private action has been filed—except for the power to intervene—as well as a cutoff of the right of private action once the Commission issues a complaint . . . . Report of Senate Committee on Labor and Public Welfare, Oct. 28, 1971, accompanying Senate Bill 52515.

And when Senator Williams, floor leader for the amendments, introduced them, he stated:

In any event duplication of proceedings is avoided by termination of one at the commencement of the other. For example, if an individual should perfect and exercise his title VII right of court action, the Commission would thenceforth be divested of jurisdiction over the matter. Likewise, if the Commission issued a complaint and proceeded with reasonable speed, jurisdiction would remain exclusive prior to the institution of enforcement or review proceedings in the court of appeals. The committee concluded that this scheme would protect aggrieved persons from undue delay, as well as prevent respondents from being subject to dual proceedings. 118 Cong.Rec. S85 (Jan. 9, 1972).

The explicit cut-off disappeared in the revisions which replaced the EEOC's proposed administrative powers with a power to institute court actions. This omission, however, appears to indicate not a change in intent, but rather a belief that the same result was accomplished through the combining of Com-

mission and private party powers in a single subsection with sequential suit rights and cross-rights of intervention. Thus, in the section-by-section analysis of the amended bill it is stated:

In providing for the individual right to sue in the event that action by the Commission is unsatisfactory or unresponsive, *it is not intended that duplication of proceedings should be allowed.* 118 Cong.Rec. S2300 (Feb. 22, 1972) (Emphasis added.)

Avoidance of duplicate lawsuits not only has the obvious practical advantages regarding time, expense, and court congestion, but also eliminates some very troublesome legal questions that would arise regarding *res adjudicata* and collateral estoppel effects of competing lawsuits brought by a governmental agency and a private attorney general regarding the same claims.

It may be noted that by the amendment to Section 705(g)(6) the EEOC was already being given the power to seek intervention in a civil action brought by an aggrieved party under Section 706 against a non-governmental respondent. The repetition of this authorization in Section 706(f)(1) is meaningful if in the latter section it was intended to be read as part of a pattern which avoided duplication of court proceedings and yet provided a mechanism for protection of any continuing interest through intervention. This conclusion seems implicit from the debate over which agency should have intervention powers:

No. 897 amendment to the court enforcement provision is intended to allow the general counsel to intervene in private actions not involving governmental agencies or political subdivisions and to make clear that it is the Attorney General who will intervene in cases involving governments, governmental agencies, and political subdivisions brought by private individuals. The present language of the Dominick substitute only authorizes the Attorney General to intervene in

private actions. The amendment is to clear up an inconsistency whereby the general counsel of the Commission may bring a civil action for the Commission, but *might not be able to protect the Commission's interest in a case where private litigant is involved.* (Emphasis added.) 118 Cong.Rec. S2180–81 (Feb. 21, 1972) (Sen. Williams).

And, indeed, Congress would hardly have subjected to the court's discretion the more efficient procedure of intervention in a priority-entitled private action upon a "timely" application and a certification that the case is of "general public importance", while intending in the very same subsection to allow the EEOC to file a duplicate lawsuit, similarly prioritized, of its own without any such restrictions. It is undisputed that prior to filing the case *sub judice* the EEOC was aware of the pendency of Runner's private action which sought to be maintained as a class action and that the EEOC did not seek intervention in the Runner case. In effect, by *claiming* a continuing right to file its own lawsuit, the EEOC is attempting to avoid any consideration of the matters which Congress intended to impose as conditions to the EEOC's litigating the matters inherent in Runner's charge. This is not a situation where the EEOC had a charge before it in addition to the one involved in the private action. It is not a situation where the private action was very narrowly circumscribed—indeed, Runner's lawsuit, brought as a class action with relief sought under 42 U.S.C. § 1981 as well as under Title VII, charged a wide range of discriminatory practices and, unlike the case *sub judice*, joined as a party defendant the labor union as well as the company. Nor, as indicated, is this a situation where the EEOC was unaware of the pending private action, or where the private action either was premature or had already been terminated when the EEOC filed its action, or where the EEOC had unsuccessfully attempted to intervene in the private action.

The conclusion here reached—that EEOC loses its power [8] to sue under Section 706(f)(1) upon filing of a private suit involving the same charge—is consistent with the maxim "expressio unius est exclusio alterius", that Congress having given the EEOC one remedy (through intervention) in such circumstances did not intend for it at the same time to possess another unexpressed remedy (through instituting its own suit). *Cf.* Nat'l Railroad Passenger Corp. v. Nat'l Ass'n of Railroad Passengers, — U.S. —, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). The result of this construction also seems in harmony with the Congressional motivations for the 1972 amendments—granting the EEOC additional enforcement powers (whether in administrative or judicial forums) because conciliation efforts were weakened by the inability or unwillingness of individuals to pursue judicial remedies, and freeing able and willing grievants to pursue such remedies without undue delay. Private plaintiffs will get less serious attention from the defendants in a case if those defendants must view their responses in the light of threats of inconsistent and competing litigation by the EEOC. Moreover, if there are problems of "over-matching", a concern of Congress, the procedure of intervention provides a satisfactory solution without the disadvantages inherent in a duplicate lawsuit.

## III. ALABAMA STATUTE OF LIMITATIONS.

The company contends that, even if the EEOC were not otherwise foreclosed under Section 706 from instituting this lawsuit, yet this action would nevertheless be barred by the Alabama statute of limitations.[9] It argues that

---

8. An argument could be made that the EEOC's suit would merely be abated during the pendency of the prior private action. Such an argument, however, is inconsistent

with the directives for the courts to expedite such actions. See Section 706(f)(4, 5).

9. There is no argument among the parties but that, if an Alabama statute were to be

this case is essentially one for the vindication of private rights; namely, those of Runner and of the class members whose interests are encompassed in his charge with the EEOC. On the other hand, the EEOC asserts that, while a state statute may affect individual back pay claims, it does not bar a governmental action for injunctive relief in the area of racial discrimination.

The basic principles for resolution of this issue are outlined in United States v. Georgia Power Co., 474 F.2d 906, 922–924 (CA5 1973), and need not be repeated here. The parties here each cite *Georgia Power* in support of their position, and there is language in the opinion—which applied a state statute to claims for back pay in a governmental pattern and practice action—helpful to each of them. The Fifth Circuit expressly pretermitted in *Georgia Power* any conclusion on whether the injunctive features of that action would have been affected by the state statute (had it run). Its declination to render such a conclusion—expressed in footnote 24, 474 F.2d at 924—suggested, however, that the answer would depend upon the proper classification of the action, *i.e.*, whether one in vindication of public rights or of private rights. It is on this test that the issue in the present case must be decided.[10]

This is not a case charging a pattern and practice of discrimination. Nor has the EEOC chosen to certify that the Runner case was one of "general public importance" and thereby seek intervention. It involves a quite limited number of persons at a small facility of the defendant company—indeed, the court in the private action ruled that for lack of the requisite numerosity that case could not be maintained as a class action. It is grounded upon a charge of discrimination by a single employee, not indicating any discrimination against other black employees and complaining only of an alleged delay (of two and one-half months) in getting an opportunity to work as a truck driver and of a resulting discharge for the presumably pretextual reason of inability to perform that work. The EEOC's case does not name as a defendant the labor union although the job in question is covered by a collective bargaining agreement.

Given these circumstances, it is difficult to categorize this lawsuit as other than one seeking, albeit duplicitously, the vindication of private rights. To be sure, there is a major public interest in the vindication of such rights, but this has been true in the prosecution of private actions under Title VII.[11]

Except where a charge is filed by a member of the Commission itself, Congress has made the role of the EEOC dependent upon the filing of charges by an aggrieved person. The EEOC is to determine whether there is reasonable cause to believe that "the charge" is true. It is directed to endeavor to eliminate through informal conciliation efforts "such alleged unlawful employment practice". See Section 706(b). Under Section 706(f), it may bring a civil action against any non-governmental respondent "named in the charge." It would seem that the allegations of the complaint in such a case would have to be reasonably related to the matters contained in the charge filed. When it

applied, the present status of case law would hold the one year statute applicable. See Buckner v. Goodyear Tire & Rubber Co., 339 F.Supp. 1108 (N.D.Ala.1972), aff'd, 472 F.2d 1287 (CA5 1973); Sewell v. Grand Lodge of Int'l Ass'n of Machinists, 445 F.2d 545 (CA5 1971); Boshell v. Alabama Mental Health Board, 473 F.2d 1369 (CA5 1973).

10. In EEOC v. Duff Bros., Inc., *supra*, the court rejected the contention that state statutes should apply to EEOC actions, but apparently without analyzing in detail the public-private right dichotomy. Also see EEOC v. Eagle Iron Works, *supra*, where the court's attention presumably was not directed to Section 706(g).

11. See the explanation regarding class actions contained in the last paragraph of the analysis of Section 706(f) in 118 Cong.Rec. S2300 (Feb. 22, 1972).

chooses to do so in a case such as the present one, it is attempting to enforce personal claims of the aggrieved party and those similarly situated—in the same manner as if the private party had sued as a "private attorney general" on behalf of himself and his class. The persons aggrieved are given the automatic right to intervene, presumably to insure that they are satisfied with the conduct of the litigation to vindicate their rights. Paraphrasing the Fifth Circuit, "these personal claims are entitled to no superior status because they are here allowed to be asserted in the [EEOC's] suit as well as in the private class action." United States v. Georgia Power Co., 474 F.2d at 923.

The court concludes that this lawsuit, filed on July 16, 1973, with respect to an alleged charge of discrimination which occurred in December, 1968, if not otherwise precluded by limitations on the EEOC contained in Section 706, would be barred by Alabama's one year statute of limitations. It is unnecessary to consider whether, comparable to the situation regarding private suits, the statute should be considered suspended, or tolled, during the period of conciliation efforts since, in any event, the suit was filed more than one year after the suit letter and after the private action had actually been filed. It should be noted that the court does not consider the limitation of potential back pay liability to a period of not more than two years prior to the filing of a charge as itself constituting a specific limitation (even for back pay claims) which would supersede any state laws. The language in Section 706(g) so providing is worded that such liability "shall not accrue from a date more than two years . . . ."—in effect placing only a maximum cut-off where under state law some greater period would otherwise be allowed.

## CONCLUSION .

For the reasons indicated, the court concludes that under Section 706 of amended Title VII the EEOC is without power to bring this action and that in any event this action would be barred by the applicable Alabama statute of limitations. Defendant's motion for summary judgment is granted by separate order.