EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Appellant,

v.

NORTH HILLS PASSAVANT
HOSPITAL.

No. 76-1154.

United States Court of Appeals,
Third Circuit.

Argued Sept. 14, 1976.

Decided Nov. 4, 1976.

As Amended Nov. 22, 1976.

Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Mary-Helen Mautner, Attys., Equal Employment Opportunity Commission, Washington, D.C., for appellant.

Edward N. Stoner, II, C. Arthur Dimond, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) appeals from an order granting summary judgment in favor of the

defendant, North Hills Passavant Hospital (North Hills), in an EEOC suit charging North Hills with employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Because the district court erred in granting summary judgment we reverse.

## I. PROCEEDINGS IN THE DISTRICT COURT

In its complaint, filed on July 22, 1975, the EEOC alleged that more than 30 days prior to the institution of the action a person claiming to be aggrieved by unlawful employment practices filed a Title VII charge with it against North Hills, and that all conditions precedent to the institution of a suit by the EEOC have been fulfilled. The complaint alleged that North Hills has engaged in unlawful employment practices including: (a) refusing to hire qualified applicants for employment on account of race, and (b) maintaining a policy and practice of job classifications which discriminates against blacks on the basis of race. The prayers for relief requested injunctive relief with respect to future employment practices, and appropriate back pay and other relief for past unlawful employment practices. North Hills denied the charge of unlawful employment practices and pleaded affirmatively the defenses, *inter alia,* of statute of limitations and laches. On September 2, 1975, North Hills made a motion pursuant to Fed.R.Civ.P. 56 to dismiss the EEOC's action; the district court granted this motion on November 3, 1975. From the pleadings, interrogatories, and other papers on file, it may fairly be said that there is no material dispute as to the foregoing facts or those set out hereafter.

The EEOC's suit arose from a complaint filed with the EEOC on January 18, 1972,

by Arthur Pope, a black male. Pope's complaint alleged that he had been denied a job at North Hills as a medical storeroom clerk because of his race, and that North Hills discriminated against blacks as a class. The EEOC investigated the charge and on April 26, 1974, issued to Pope and North Hills a determination letter, pursuant to 29 C.F.R. § 1601.19b(b) (1974), that there was reasonable cause to believe that North Hills had discriminated in its hiring practices against Pope and against blacks as a class. The reasonable cause determination with respect to blacks as a class was based on statistical information, referred to in the determination letter, which tended to show that blacks were a disproportionately small percentage of North Hills' work force when compared with the available minority labor force. Thereafter, as the statute,[1] and regulations[2] require, the EEOC undertook conciliation efforts, looking toward a voluntary resolution of North Hills' allegedly unlawful employment practices. Those efforts proved unavailing. On September 20, 1974, pursuant to 29 C.F.R. § 1601.25 (1974), the EEOC informed North Hills' attorney that conciliation had failed. On September 25, 1974, the EEOC wrote to Pope, advising him that efforts to settle his case had been unsuccessful, and informing him of his right to file a civil action against North Hills in federal court. The EEOC letter to Pope said in part:

> In order to proceed in this matter you must make a written request for a Right to Sue letter from this office. You must file your action in the United States District Court within ninety (90) days of your receipt of the Notice of Right to Sue.[3]

Following this advice, Pope requested a Notice of Right to Sue and on December 6, 1974, the EEOC issued such a notice. On

---

**1.** 42 U.S.C. § 2000e–5(b).

**2.** 29 C.F.R. § 1601.19b(a) (1974).

**3.** The quoted advice was questionable since the 90 day limitation prescribed in § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1), for the commencement of a private Title VII suit against a non-federal employer appears to run from the receipt of

notice of failure of conciliation efforts. *See* 29 C.F.R. § 1601.25 (1974). *Compare Allen v. United States,* 542 F.2d 176 (3d Cir., filed Sept. 2, 1976), involving 5 C.F.R. § 713.234, .282 (1976), *with* 29 C.F.R. § 1601.25 (1974). In this case we are not required to decide the timeliness of Pope's civil action.

January 10, 1975, within 34 days of receipt of the Notice of Right to Sue, but 107 days after receipt of the letter notifying him of the failure of conciliation, Pope filed a civil complaint against North Hills in the district court. Pope's civil complaint alleged both a Title VII violation and a violation of 42 U.S.C. § 1981, and sought class action relief on behalf of similarly situated blacks.

Meanwhile, the EEOC files concerning Pope's charges were forwarded to the EEOC's Philadelphia Regional Litigation Center for consideration for litigation by the EEOC pursuant to § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). The EEOC's Litigation Center received a copy of Pope's civil complaint on January 31, 1975. While the Litigation Center was reviewing the case to determine whether to intervene in Pope's civil action North Hills, on March 20, 1975, filed a motion in the district court to dismiss the Title VII count of Pope's civil complaint for lack of jurisdiction. North Hills' motion argued that Pope was time barred from bringing his private Title VII suit because he had failed to file his complaint within 90 days of receipt of the notice of failure of conciliation.[4] Noting the problems of intervening in a private suit which might be dismissed, the Litigation Center, on April 29, 1975, requested from the EEOC authority for the filing of an independent EEOC civil suit in regard to Pope's charges. On May 27, 1975, the district court dismissed the Title VII count of Pope's civil complaint as untimely filed, but denied a motion to dismiss the § 1981 count.[5]

Two weeks after the Title VII count in Pope's case was dismissed, and before the EEOC authorized its General Counsel to file an independent EEOC suit, the respective attorneys for Pope and North Hills called an EEOC attorney at the Litigation Center, inviting him to participate in settlement negotiations regarding Pope's civil complaint. They were informed that the EEOC attorney could not participate in the settlement discussions until the EEOC approved the filing of a civil action. The instant suit was filed on July 22, 1975, 56 days after Pope's Title VII claim was dismissed.

Meanwhile, on July 9, 1975, Pope and North Hills entered into a settlement agreement concerning Pope's outstanding civil claim against North Hills. The agreement provided that North Hills was to pay Pope $1,500 and Pope's attorney $4,000 in exchange for Pope's unconditional release of North Hills from all claims alleged in Pope's civil complaint. It provided no relief for the class of blacks on whose behalf Pope had brought the suit. The settlement was contingent upon Pope's obtaining the consent of the EEOC to withdraw the charge of employment discrimination that Pope had filed with the EEOC.[6] Pope requested such consent by letter dated July 9, 1975. The EEOC rendered no immediate response to this request. On July 23, 1975, one day after the EEOC's civil suit was filed, Pope and North Hills filed a joint motion in district court for an order compelling the EEOC to advise them, and the court, whether the EEOC would approve withdrawal of Pope's charges. By letter dated July 25, 1975, the EEOC advised the district court that it would not consent to the withdrawal of Pope's charges, as the settlement agreement did not resolve the class issues raised in Pope's EEOC complaint. After being informed of the EEOC's decision, Pope and North Hills, on September 30, 1975, entered into a "Supplemental Stipulation and Settlement Agreement," the operative provisions of which are quoted in the margin.[7] The Supplemental Stipulation

---

4. See note 3 *supra*.

5. Previously, on April 21, 1975, the district court had denied a motion to dismiss the Title VII claim but had dismissed the § 1981 claim. North Hills moved for reconsideration and this order was vacated.

6. 29 C.F.R. § 1601.9 (1974) provides:

A charge filed by or on behalf of an aggrieved person may be withdrawn only by the aggrieved person with the consent of the Commission.

7. 1. A civil action, No. 75–890, is now pending in the United States District Court for the Western District of Pennsylvania based upon the EEOC charge of Arthur Pope, in which action the EEOC is Plaintiff.

and Settlement Agreement is expressly contingent on the outcome of the EEOC suit, and thus of this appeal. When North Hills moved for summary judgment in this case, Pope's Title VII claim had been dismissed by an interlocutory order and his § 1981 claim had been contingently disposed of by a settlement agreement and was still pending in the district court.

The district court described the issues tendered by North Hills' motion for summary judgment as follows:

> The question for this court's determination is whether or not the delay in filing the action by the EEOC coupled with its failure to intervene in the private suit involving the same charge (Civil Action No. 75–60) and its unwillingness to participate in the settlement of Civil Action No. 75–60, constitutes a bar to the Commission proceeding with the instant action?

The district court answered the question affirmatively, both on statutory jurisdictional and on laches grounds. We consider those grounds separately.

## II. THE EEOC's STATUTORY AUTHORITY

◼ In granting summary judgment the district court held:

> [I]t appears to the Court that consistent with the legislative intent of the Equal Employment Opportunity Act, once a right-to-sue letter issues, and a private party institutes an action on its own behalf, the only recourse left to the EEOC is to intervene in the case if it is one of general public importance.

The validity of that holding must be measured against the EEOC's statutory authority to sue, found in § 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1). In pertinent part, it reads as follows:

> If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. . . . The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. . . . Upon timely application, the court may, in its discretion, permit the Commission . . . to intervene in such civil action upon certification that the case is of general public importance.

---

2. Defendant North Hills Passavant Hospital has currently before that Court a motion for complete summary judgment in No. 75–890.

3. If, and only if, the Court grants the Hospital's motion for complete summary judgment as to the entire action in No. 75–890 and that ruling becomes final or if the EEOC, before the Court rules on that motion for complete summary judgment, moves for the action to be dismissed with prejudice and it is so finally dismissed with prejudice before the Court rules on that motion for complete summary judgment, the "Stipulation and Settlement Agreement" between the parties dated July 9, 1975, shall be in full force and effect as if the EEOC had approved Arthur Pope's request to withdraw his charge.

Section 706(f)(1) permits the EEOC to sue a non-governmental defendant and authorizes aggrieved private parties to intervene as of right in an EEOC suit. It also permits aggrieved private parties to bring independent civil actions after the receipt of a notice of failure of conciliation, and provides that the court may, in its discretion, permit the EEOC to intervene in such private actions. Nowhere in § 706(f)(1) is there any explicit qualification of the EEOC's general authority to sue as granted in the first sentence of the section. If there is such a qualification it must be implied from the limited right of permissive intervention afforded to the EEOC with respect to private suits. A contrary interpretation, however, may be implied by interpreting the district court's discretion to reject intervention by the EEOC as evidencing a Congressional viewpoint that no harm could come from a negative exercise of such discretion because the EEOC could always initiate its own suit. A reasonable interpretation of the plain language is that the EEOC can choose not to sue, can initiate its own suit, or can seek to intervene in a private suit. There is no language on the face of this section which dictates that any of these options are to be foreclosed by the institution of a private suit.

In a series of cases, the leading case being Judge Pointer's decision in *EEOC v. Union Oil Co. of California*, 369 F.Supp. 579 (N.D. Ala.1974), courts have stated in both holdings and dicta that § 706(f)(1) prohibits the EEOC from filing an independent civil action on behalf of the public interest once a private suit involving the same charge has been filed.[8] These cases have assumed that once a private action is filed the EEOC is limited to an application for permissive intervention. Finding no express support for this assumption on the face of § 706(f)(1), the courts which have voiced it have resorted to legislative history. All of the courts which have gone behind the plain language of § 706(f)(1) have relied on the same legislative sources. These are a House Report on H.R. 1746,[9] issued on June 2, 1971, by the House Committee on Education and Labor; a Senate Report on S. 2515,[10] issued on October 28, 1971, by the Senate Committee on Labor and Public Welfare; and remarks on the floor of the Senate by Senator Williams,[11] the Senate floor manager of what became Pub.L. No. 92–261, the Equal Employment Opportunity Act of 1972. That reliance is misplaced, for the references are not to bills containing the present language of § 706(f)(1), but to bills in a quite different form which were not enacted into law.

The first quotation commonly relied on is from the House Report:

> The committee was concerned about the interrelationship between the newly

---

8. *E. g., EEOC v. Missouri Pacific Railroad Co.,* 493 F.2d 71 (8th Cir. 1974); EEOC v. Duval Corp., 528 F.2d 945, 948–49 (10th Cir. 1976); EEOC v. Occidental Life etc., 535 F.2d 533, 536 (9th Cir. 1976) (dictum); *EEOC v. Cronin,* 370 F.Supp. 579 (E.D.Mo.1973). The Fifth and Sixth Circuits have recognized a Congressional intention to avoid duplicative suits and to limit the EEOC to the right of permissive intervention in a private action when the EEOC suit raises no substantially different issues and seeks no relief other than for the private party. However, these Circuits have held that when the EEOC's suit encompasses allegations and relief extending beyond that averred in the private complaint the EEOC is not barred from instituting its own suit even though the factual foundations of the two suits are virtually identical. *E. g., EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352 (6th Cir.), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368; *EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453 (5th Cir. 1975);

*EEOC v. McLean Trucking Co.,* 525 F.2d 1007 (6th Cir. 1975).

9. H.R.Rep. No. 92–238, 92d Cong., 1st Sess. (1971) (hereinafter cited as House Report), reprinted in 2 U.S.Code Cong. & Admin.News, p. 2137 (1972) and Leg.Hist. 61 (citations to "Leg. Hist." refer to a one volume Committee Print entitled "Legislative History of the Equal Employment Opportunity Act of 1972" 92d Cong., 2d Sess. (1972)). H.R. 1746 was entitled the "Equal Employment Opportunities Enforcement Act."

10. S.Rep. No. 92–415, 92d Cong., 1st Sess. (1971) (hereinafter cited as Senate Report), reprinted in Leg.Hist. 410. S. 2515 was entitled the "Equal Employment Opportunities Enforcement Act of 1971."

11. 118 Cong.Rec. 295 (1972), reprinted in Leg. Hist. 587.

created cease and desist enforcement powers of the Commission and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for termination of Commission jurisdiction once a private action has been filed (except for the power of the Commission to intervene in the private actions). It contains as well a provision for termination of the right of private action once the Commission issues a complaint or enters into a conciliation or settlement agreement which is satisfactory to the Commission and to the person aggrieved. If such an agreement is not acceptable to the aggrieved party, his private right of action is preserved.[12]

That Report refers to a proposed bill which would have given the EEOC not a right to institute suits in federal trial court, but rather administrative cease and desist authority.[13] The above reference to "duplication of proceedings" refers to duplication between an administrative cease and desist proceeding and a private lawsuit.[14] The Committee version of H.R. 1746 would have granted cease and desist authority, but would also have protected employers from the problems which might ensue from being a respondent in duplicative judicial and administrative proceedings, by terminating the EEOC's cease and desist authority once a private suit was filed.[15] The question whether the EEOC was to be given either administrative cease and desist authority or the authority to institute suits in federal trial court was a matter of serious debate in both houses.[16] The grant of cease and desist authority contained in the Committee version of H.R. 1746 was amended,[17] subsequent to the issuance of the House Report, by the so-called "Erlenborn substitute."[18] The "Erlenborn substitute" replaced H.R. 1746's grant of cease and desist authority with the authority to institute suits in federal trial court.[19] The enforcement provisions of the bill which was ultimately enacted into law[20] were modeled after the "Erlenborn substitute," and contained no grant of cease and desist authority.[21] Thus the quoted reference in the House Report regarding the preclusion of duplicative administrative and judicial proceedings is entirely meaningless as an illumination of § 706(f)(1).

The second quotation commonly relied on is from the Senate Report:

The Committee is concerned, however, about the interplay between the newly created enforcement powers of the Commission and the existing right of private

**12.** House Report 12, reprinted in 2 U.S.Code Cong. & Admin.News, p. 2148 (1972) and Leg. Hist. 72.

**13.** As originally enacted, Title VII of the Civil Rights Act of 1964, Pub.L. No. 88–352, 78 Stat. 241, 42 U.S.C. § 2000e et seq. (1964), granted the EEOC neither cease and desist authority nor the authority to institute suits in federal court. This original version of the Act did grant a private individual the right to seek relief through a private action in federal district court. § 706(e), 42 U.S.C. § 2000e–5(e) (1964).

**14.** See House Report 8–13, reprinted in 2 U.S. Code Cong. & Admin.News, pp. 2143–48 (1972) and Leg.Hist. 68–73.

**15.** House Committee version of H.R. 1746, § 715a, House Report 54–55, reprinted in Leg. Hist. 114–15.

**16.** E. g., 117 Cong.Rec. 31959 (1971) (remarks of Rep. Martin), reprinted in Leg.Hist. 193–94; 117 Cong.Rec. 31979–81 (1971) (remarks of Rep. Erlenborn), reprinted in Leg.Hist. 247–49;

118 Cong.Rec. 933 (1972) (remarks of Sen. Thurmond), reprinted in Leg.Hist. 810–11; 118 Cong.Rec. 2861–62 (1972) (remarks of Sen. Dominick, reprinted in Leg.Hist. 1346–47; see index to Congressional debates over EEOC enforcement powers, Leg.Hist. IX–X.

**17.** 117 Cong.Rec. 32111–12 (1971), reprinted in Leg.Hist. 315–17.

**18.** Leg.Hist. 327–32.

**19.** Id.

**20.** Pub.L. No. 92–261, 86 Stat. 103, 42 U.S.C. § 2000e et seq.

**21.** Compare § 706 of the House Committee version of H.R. 1746, House Report 54–55, reprinted in Leg.Hist. 103–07, with § 706 of H.R. 1746 as passed by the House (the "Erlenborn substitute"), Leg.Hist. 327–32 [and] § 706, Pub.L. No. 92–261, 86 Stat. 104, 42 U.S.C. § 2000e–5.

action. It concluded that duplication of proceedings should be avoided. The bill therefore contains a provision for cutoff of the Commission's jurisdiction once the private action has been filed—except for the power to intervene—as well as a cutoff of the right of private action once the Commission issues a complaint. . . ." [22]

This reference is to the Committee version of Senate bill S. 2515 which would have granted the EEOC cease and desist authority.[23] This quotation sheds no more light on the language of § 706(f)(1) than the language quoted from the House Report,[24] for subsequent to the issuance of the Senate Report, S. 2515 was amended, by the so-called "Dominick amendment," which substituted the EEOC's grant of cease and desist authority with the authority to institute suits in federal trial court.[25]

The problems which may arise from duplicative administrative and judicial proceedings are entirely different from those which may be created by the duplication of separate law suits. Rule 42(a), Fed.R. Civ.P., provides an adequate procedure for dealing with the problems associated with duplicative lawsuits.[26] There is, however, no provision for the consolidation of an administrative proceeding with a law suit. Congress, we assume, was well aware of this distinction in 1971 when the House and Senate Reports explicitly prohibited duplicative administrative and judicial proceedings which might arise as a result of granting the EEOC cease and desist authority. The above quoted language from these Reports is, however, of little relevance in interpreting the limits upon the EEOC's power to institute suits in federal trial court pursuant to § 706(f)(1).

The third quotation commonly relied on is a statement by Senator Williams on the floor of the Senate:

In any event duplication of proceedings is avoided by termination of one at the commencement of the other. For example, if an individual should perfect and exercise his title VII right of court action, the Commission would thenceforth be divested of jurisdiction over the matter. Likewise, if the Commission issued a complaint and proceeded with reasonable speed, jurisdiction would remain exclusive prior to the institution of enforcement or review proceedings in the court of appeals. The committee concluded that this scheme would protect aggrieved persons from undue delay, as well as prevent respondents from being subject to dual proceedings.[27]

Senator Williams was the co-sponsor and Senate floor manager of S. 2515 and made this statement on January 19, 1972, at the time he introduced the Senate Committee's version of S. 2515.[28] In *Sperling v. United States,* 515 F.2d 465, 479–81 (3d Cir. 1975), we pointed out in another context the unreliability of selected references to the Senate floor debates on S. 2515.[29] The same difficulties apply here. It must be noted that although the House-passed version of H.R. 1746 was amended by the "Erlenborn substitute" on September 16, 1971,[30] on January 19, 1972, S. 2515 still contained the provisions granting the EEOC cease and

---

**22.** Senate Report 24, reprinted in Leg.Hist. 433.

**23.** *See* Senate Report 17–24, reprinted in Leg. Hist. 426–33.

**24.** See text accompanying notes 12–21 *supra.*

**25.** See text accompanying notes 30–35 *infra.*

**26.** Fed.R.Civ.P. 42(a) provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

**27.** 118 Cong.Rec. 295 (1972), reprinted in Leg. Hist. 587.

**28.** 118 Cong.Rec. 294–95 (1972), reprinted in Leg.Hist. 583–87.

**29.** *See also* Schmeck, *8-Volume Record of Hearings That Were Never Held Is Published, With Full Quotations, by Senate Panel,* N.Y. Times, Oct. 4, 1976, at 15, col. 3.

**30.** 117 Cong.Rec. 32111–12 (1971), reprinted in Leg.Hist. 315–17.

desist authority.[31] Senate Bill S. 2515 remained in this form until the adoption of the "Dominick amendment,"[32] on February 15, 1972,[33] which substituted the grant of cease and desist authority with court enforcement authority. Senate Bill S. 2515, as amended by the "Dominick amendment," was passed by the Senate on February 22, 1972.[34] Anything that was said with respect to S. 2515 on the subject of duplicative proceedings prior to the adoption of the "Dominick amendment" suffers the same infirmity as an illumination of § 706(f)(1) as do the quotations from the House and Senate Reports set out above. Thus any reliance on Senator Williams' January 19, 1972 remarks on the Senate floor is misplaced, since these remarks clearly refer to the proposed but later abandoned version of S. 2515 which granted cease and desist authority.[35]

One piece of Senate legislative history exists in the period following the adoption of the "Dominick amendment" which might tend to support the view that a Congressional concern to preclude duplicative public and private enforcement proceedings survived the elimination of the EEOC's grant of cease and desist authority. That evidence is a section-by-section analysis of S. 2515, as amended by the "Dominick amendment," which Senator Williams had printed in the Congressional Record on February 22, 1972.[36] In *EEOC v. Union Oil of California, supra,* 369 F.Supp. 579, Judge Pointer quotes from a part of that analysis referring to § 706(f)(1) of S. 2515 as amended:

> In providing for the individual right to sue in the event that action by the Com-

mission is unsatisfactory or unresponsive, it is not intended that duplication of proceedings should be allowed.[37]

He omits, however, the next sentence, which reads:

> Therefore, in any proceeding where the General Counsel or the Attorney General, as the case may be, is proceeding with due diligence within the time limits specified in this subsection, the person aggrieved would be precluded from instituting an individual action until such time as one of the specific conditions of this subsection are not met.[38]

The entire quoted paragraph is unclear. Judge Pointer reads it as referring to a prohibition against simultaneous private and EEOC lawsuits. But it is at least as likely that Senator Williams was referring to the fact that the EEOC, or the Attorney General if the employer is a governmental agency, has 180 days in which to attempt conciliation, and that the private litigant cannot sue while conciliation efforts are taking place during that period.[39] But whatever Senator Williams may have had in mind in his February 22, 1972 section-by-section analysis, the more authoritative section-by-section analysis is that submitted by Senator Williams on March 6, 1972, as an explanation of the Joint Conference Committee version of the bill which was eventually enacted into law. The House-passed version of H.R. 1746, and the Senate-passed version of S. 2515, were sent to a joint conference committee to resolve the differences between the two bills. After amendments, the Conference-passed version of the bill was reported out to both houses for

---

**31.** 118 Cong.Rec. 295, reprinted in Leg.Hist. 587.

**32.** 118 Cong.Rec. 3808–09, reprinted in Leg. Hist. 1499–1504.

**33.** 118 Cong.Rec. 3979, reprinted in Leg.Hist. 1557.

**34.** 118 Cong.Rec. 4944–48, reprinted in Leg. Hist. 1779–89.

**35.** *Compare* § 706 of the Senate Committee version of S. 2515, Senate Report 55–63, reprinted in Leg.Hist. 464–72, *with* § 706 of S. 2515 as passed by the Senate ("Dominick

amendment"), Leg.Hist. 1780–83 [*and*] § 706, Pub.L. No. 92–261, 86 Stat. 104, 42 U.S.C. § 2000e–5.

**36.** 118 Cong.Rec. 4940–44 (1972), reprinted in Leg.Hist. 1769–78.

**37.** 369 F.Supp. at 585; 118 Cong.Rec. 4941–42 (1972), reprinted in Leg.Hist. 1772.

**38.** 118 Cong.Rec. 4941–42 (1972), reprinted in Leg.Hist. 1772.

**39.** *See* § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1).

final passage.[40] Senator Williams as Chairman of the Senate Conferees, and Congressman Perkins as Chairman of the House Conferees, submitted identical section-by-section explanations of the Conference-passed version of the bill. That analysis is printed in the Congressional Record, Senate, for March 6, 1972.[41] The explanation of § 706(f)(1) in Senator Williams' and Congressman Perkins' March 6, 1972 analysis is substantially identical to Senator Williams' February 22, 1972, analysis, except that the paragraph containing the sentence on which Judge Pointer relies is entirely omitted. There is absolutely no mention in the March 6, 1972 section-by-section analysis of any concern about duplicative lawsuits.[42] As it was the Conference-passed version of the bill which was enacted into law, the March 6, 1972 analysis is far more authoritative than Senator Williams' February 22, 1972 analysis of the Senate-passed version of S. 2515.[43]

Our analysis of the legislative history leads us to the conclusion that there is no legislative history which can be relied upon to give the language of § 706(f)(1) any meaning other than that conveyed by the plain words. The plain words say that the EEOC may bring a civil action against a non-governmental respondent. They do not say that the EEOC loses that power when a private party brings a suit based on the same facts or charges. The EEOC had the statutory authority to bring the lawsuit in the instant case. Any burden arising from the fact that Pope's lawsuit is also pending against the same defendant can be resolved in proceedings under Fed.R.Civ.P. 42(a).[44]

## III. LACHES

■ North Hills' motion for summary judgment asserted the time bars of statute of limitations and of laches. The statute of limitations argument was predicated on an interpretation of § 706(f)(1) which would bar an EEOC suit commenced 180 days after the filing of a charge. As the district court acknowledged, such an interpretation of § 706(f)(1) was rejected by this court in *EEOC v. E. I. duPont de Nemours & Co.*, 516 F.2d 1297 (3d Cir. 1975).[45] Judge Aldisert makes clear in *DuPont, supra,* that the 180 day period is a front end prohibition against a private suit, designed to permit conciliation and thus possibly avoid litigation. After the 180 days have expired, the private party may sue; but certainly the EEOC's conciliation or investigation efforts may continue, especially where such efforts seek to end a practice or pattern which affects a class as well as an individual. *See* 516 F.2d at 1301–02. The *DuPont* analysis serves to place in perspective the district court's holding in regard to laches.

The district court's first asserted reason for barring the EEOC suit on the basis of laches was the passage of three years, three months, and ten days between the filing of Pope's original charge with the EEOC and the EEOC's institution of the instant suit. But it is undisputed that investigation and

40. The Conference Report, including the Conference-passed version of the bill, is found in S.Rep. No. 92–681, 92d Cong., 2d Sess. (1972), and is reprinted in Leg.Hist. 1800–42, and in part in 2 U.S.Code Cong. & Admin.News, p. 2179 (1972).

41. 118 Cong.Rec. 7166–69 (1972), reprinted in Leg.Hist. 1844–51.

42. *Compare* Senator Williams' February 22, 1972 analysis, 118 Cong.Rec. 4940–44 (1972), reprinted in Leg.Hist. 1769–78, *with* Senator Williams' March 6, 1972 analysis, 118 Cong. Rec. 7166–69 (1972), reprinted in Leg.Hist. 1844–51.

43. The Conference-passed version of the bill was reported out to both houses for final passage. Because the House had passed H.R. 1746 before the Senate had acted on its own bill, it was the House bill as amended which was transmitted to Congress for approval. The Senate approved the bill on March 6, 1972, followed by the House on March 8, 1972.

44. See note 26 *supra.*

45. Other Circuits have also refused to recognize that pursuant to § 706(f)(1) the EEOC is subject to a 180 day time limitation. *E. g., EEOC v. Kimberly-Clark Corp., supra,* 511 F.2d 1352 (6th Cir.); *EEOC v. Louisville & Nashville R. R. Co.,* 505 F.2d 610 (5th Cir. 1974); *EEOC v. Cleveland Mills Co.,* 502 F.2d 153 (4th Cir. 1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975).

conciliation efforts continued until September 20, 1974, when the EEOC informed North Hills' attorney that conciliation had failed. Certainly *DuPont* is controlling with respect to the propriety of the EEOC's conduct in this respect. *Id.* Between the filing of the charge and the determination of reasonable cause the EEOC's investigation led it to believe that Pope's case was not an isolated one. When on April 26, 1974, it issued its reasonable cause determination letter, North Hills was fully informed of the charges it had to defend or conciliate. North Hills' moving papers fail to identify any difficulties which it encountered in preparing to do so because of the length of either the investigation or the subsequent conciliation efforts. In light of the fact that no evidence suggests that the EEOC acted unreasonably during the investigation and conciliation stages of this case, and that the EEOC filed the instant action within 10 months of its failure of conciliation, we find no facts capable of supporting a holding of laches on the basis of unreasonable delay.

■ Next the district court refers to the EEOC's failure to intervene in Pope's suit. There is no indication, however, that North Hills' position would be materially different if the EEOC had sought to intervene, or even that the district court would have exercised its discretion to permit intervention.[46] Had the EEOC sought and been granted intervention North Hills would be in no different position than it is now. For the EEOC would not have settled on the terms agreed to by Pope, terms which gave no relief to the class he initially sought to represent. We observe, moreover, that the

same district judge who dismissed this EEOC case because it failed to intervene in Pope's Title VII case, had previously ruled that the district court lacked jurisdiction over Pope's case because it was filed too late. Certainly North Hills can not have it both ways.

■ Finally, the district court refers to the EEOC's refusal to participate in the settlement negotiations. No authority has been cited for the unusual proposition that such a refusal provides a factual predicate for a laches defense. But more to the point is the undisputed fact that when an invitation to participate in settlement negotiations was extended to the EEOC, Pope's Title VII claim had been dismissed, and only his § 1981 claim remained. The EEOC does not have statutory authority for the enforcement of the latter statute. Thus, until the EEOC authorized its General Counsel to proceed with its own suit there was no claim pending in the district court over which the EEOC was authorized to negotiate. And as we observed with respect to the failure to intervene, there has been no showing that had the EEOC participated in settlement negotiations, North Hills would have been any better off.

In short, the undisputed facts of this case fail to establish a lack of diligence or inexcusable delay on the part of the EEOC, and fail to establish any prejudice to North Hills from the passage of time. Since there is no factual basis for a laches defense there is no occasion to decide in this case whether delays by the EEOC ever could as a matter of law serve as an equitable time bar against the class members on whose behalf it files a civil action.[47]

---

**46.** The Pope and EEOC cases were assigned to the same district court judge.

**47.** In support of its argument that the EEOC is not subject to the defense of laches in enforcing a public right the EEOC refers to the following cases. *EEOC v. Occidental Life Insurance Co.,* 535 F.2d 533, 540 n.12 (9th Cir. 1976); *Chromcraft Corp. v. EEOC,* 465 F.2d 745, 746 (5th Cir. 1972); *EEOC v. Christiansburg Garment Co.,* 376 F.Supp. 1067, 1071 (W.D.Va. 1974); *EEOC v. Eagle Iron Works,* 367 F.Supp. 817, 824 (S.D.Iowa 1973); *cf. Costello v. United*

*States,* 365 U.S. 265, 281, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *United States v. Thompson,* 98 U.S. 486, 488–89, 25 L.Ed. 194 (1878); *Nabors v. NLRB,* 323 F.2d 686, 688 (5th Cir. 1963), *cert. denied,* 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964). Since we do not address whether the EEOC is subject to laches in the instant case we need not pass on the applicability of the above cases to that issue.

**674**

### IV. CONCLUSION

The summary judgment dismissing the complaint will be reversed and the case remanded to the district court for trial.